# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATHANIEL HICKS<br>1011 Maiden Grass Drive<br>Laplata, Maryland 20646<br><br>    Plaintiff,<br><br>v.<br><br>OFFICER GERALD L. FERREYRA, in his individual capacity<br>1902 Stoneridge Ct,<br>Marriottsville, MD 21104<br><br>and<br><br>OFFICER BRIAN A. PHILLIPS, in his individual capacity<br>1100 7th St NE, Apt 2<br>Washington D.C. 20002<br><br>    Defendants. | Civil Action No.    8:16-cv-2521<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## NATURE OF ACTION

1. Plaintiff Nathaniel Hicks, a twenty-year, African-American veteran of the United States Secret Service ("Special Agent Hicks"), was unlawfully detained by two, white United States Park Police, Greenbelt Station ("USPP") officers—Gerald L. Ferreyra and Brian A. Phillips (collectively "Defendants")—in violation of the constitutional prohibition against unreasonable seizures. Accordingly, Special Agent Hicks brings this *Bivens* action to seek

redress for his unlawful seizure, which violated his rights under the Fourth Amendment to the United States Constitution.

2. On July 11, 2015, Special Agent Hicks was assigned as the Baltimore Lead Advance Agent for Department of Homeland Security Secretary Jeh Johnson's motorcade. As the Baltimore Lead Advance Agent, Special Agent Hicks was responsible for accompanying Secretary Johnson as his motorcade traveled from Washington, DC toward and through Maryland.

3. Early that morning, Special Agent Hicks drove to a designated point to meet the motorcade—the right shoulder of Interstate 295-N (the Baltimore-Washington Parkway) at exit 198. He was in his Secret Service-issued vehicle.

4. As he sat waiting for the motorcade to approach, fulfilling his official duties as a federal law enforcement agent, he was doing, and had done, nothing remotely criminal in nature.

5. Defendant Officer Ferreyra, who had been driving on the Baltimore-Washington Parkway, stopped his USPP vehicle behind Special Agent Hicks, got out of his car, and approached Special Agent Hicks's vehicle. Officer Ferreyra was in USPP uniform. Upon approaching the vehicle, Officer Ferreyra drew his gun, pointed his weapon at Special Agent Hicks, and began screaming at him.

6. Special Agent Hicks immediately and calmly identified himself as a United States Secret Service Agent. He requested permission to retrieve his federal law enforcement credentials. Special Agent Hicks provided his federal law enforcement credentials to Officer Ferreyra. Further, Special Agent Hicks explained that he was on-duty and waiting to lead an official motorcade of a Secret Service protectee.

7. With his gun still aimed at Special Agent Hicks, Officer Ferreyra inspected Special Agent Hicks's credentials. Despite confirming and acknowledging that Special Agent Hicks was, in fact, a federal law enforcement agent with the Secret Service, and having no probable cause or even a reasonable suspicion to believe that Special Agent Hicks had done anything unlawful to warrant further detention, Officer Ferreyra continued to seize him without explanation.

8. Defendant Officer Brian Phillips, also in USPP uniform and armed, arrived on the scene shortly thereafter. Defendant Officer Phillips similarly acknowledged his awareness that Special Agent Hicks was a federal law enforcement officer on official duty, nonetheless he continued to detain him.

9. Throughout the time he was detained, Defendants yelled at Special Agent Hicks and treated him in an objectively hostile and demeaning manner. Repeatedly, Special Agent Hicks asked for permission to be released so that he could join the motorcade of the Secret Service protectee, as required by his job duties. Each Defendant, at various points during the time that he was in custody, told Special Agent Hicks that he was not free to leave.

10. After Special Agent Hicks had been detained for well over thirty minutes—and for no reason at all—Department of Homeland Security Secretary Johnson's Secret Service motorcade began to approach. The motorcade slowed to allow Special Agent Hicks to join it as required by his Secret Service duties; however, Defendants refused to release him. Accordingly, the motorcade approached and traveled through Maryland without Special Agent Hicks. One USPP officer on the scene mockingly waved his hand goodbye at the motorcade as it passed and while Special Agent Hicks remained held on the side of the road.

11.     At some time after cabinet Secretary Johnson's motorcade passed, and while Special Agent Hicks remained detained, a USPP Sergeant, T. F. Wallace, arrived. Sergeant Wallace spoke to Special Agent Hicks and acknowledged that Officers Ferreyra and/or Phillips had told him that Special Agent Hicks was a federal law enforcement officer, as well as that Special Agent Hicks had not done anything criminal in nature. Yet, Sergeant Wallace provided no explanation for the reason that Defendants had detained him for a prolonged period.

12.     It was not until at least an hour after Officer Ferrerya first approached Special Agent Hicks with his gun drawn that Special Agent Hicks was finally released.

13.     In total, Defendants collectively detained Special Agent Hicks on the side of the road for at least an hour without probable cause or any reasonable suspicion to believe that he had done anything unlawful. Defendants' actions prevented Special Agent Hicks from completing his assignment as an on-duty Secret Service Agent.

14.     As Special Agent Hicks was driving away, headed north-bound on the Baltimore-Washington Parkway, Defendant Officer Phillips drove behind him in his USPP vehicle, signaled for him to pull over, and again detained him on the side of the road. This second, successive detention was similarly effectuated without any reasonable suspicion that Special Agent Hicks had done anything wrong.

15.     Again, Officer Phillips retrieved Special Agent Hicks's identification and car registration (despite just having had possession of these documents) and continued to talk to him in a demeaning and degrading tone with no possible justification. It was not until another USPP officer on the scene spoke to Officer Phillips that Officer Phillips returned to Special Agent Hicks's car to release him—but not before throwing his identification and registration at him.

16. Special Agent Hicks did nothing whatsoever to justify being detained on the side of the road for at least an hour or being subsequently stopped a second time for absolutely no reason at all. During the entire time he was detained, Defendants were aware that Special Agent Hicks was a federal law enforcement officer on official business for the United States Secret Service with an assignment to protect a cabinet-level protectee.

**PARTIES**

17. Plaintiff Nathaniel Hicks is an African-American Special Agent in the United States Secret Service. Special Agent Hicks began working for the Secret Service in 1996, in the Agency's Washington, DC office. Throughout his twenty-year career, Special Agent Hicks has served in a variety of capacities, including as a member of former Vice President Dick Cheney's official security detail. Since 2010, Special Agent Hicks has been assigned to the Baltimore Field Office, located at 100 S. Charles Street in Baltimore, Maryland.

18. Defendant Officer Gerald L. Ferreyra (Badge No. 072) is, and was at all times relevant to this action, an officer with the United States Park Police ("USPP"), a unit of the National Park Service within the United States Department of the Interior. Defendant Officer Ferreyra works from USPP's Greenbelt Park Station, located at 6501 Greenbelt Road, Greenbelt, Maryland 20770.

19. While on duty, Defendant Officer Ferreyra participated in and/or was responsible for Special Agent Hicks's unlawful detention. Accordingly, at all times relevant to this Complaint, Defendant Officer Ferreyra was acting under color of federal law and within the scope of his employment as a USPP officer.

20. Defendant Officer Brian Allen Phillips (Badge No. 043) is, and was at all times relevant to this action, an officer with the United States Park Police ("USPP"), a unit of the

National Park Service within the United States Department of the Interior. Defendant Officer Phillips works from USPP's Greenbelt Park Station, located at 6501 Greenbelt Road, Greenbelt, Maryland 20770.

21. While on duty, Defendant Officer Phillips participated in and/or was responsible for Special Agent Hicks's unlawful, discriminatory detention. Accordingly, at all times relevant to this Complaint, Defendant Officer Phillips was acting under color of federal law and within the scope of his employment as a USPP officer.

## JURISDICTION AND VENUE

22. This action arises under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331.

23. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## FACTUAL BACKGROUND

24. On July 11, 2015, Special Agent Hicks was assigned as the United States Secret Service Baltimore Lead Advance Agent for Department of Homeland Security Secretary Jeh Johnson's Secret Service protection motorcade, which was traveling from Washington, DC to New Jersey.

25. For each jurisdiction through which cabinet Secretary Johnson traveled, the Secret Service assigned specific agents who worked within the local Secret Service field office—and were thus familiar with the locations of local hospitals, safe houses, and protocols within that jurisdiction in the event of an emergency—to be part of his official motorcade.

26. As the Baltimore Lead Advance Agent for the Secret Service, Special Agent Hicks was responsible for accompanying Secretary Johnson as his Secret Service motorcade

6

traveled into and through Maryland. Accordingly, Special Agent Hicks was to meet Secretary Johnson's motorcade at a designated location on the Baltimore-Washington Parkway and accompany the motorcade as it moved through Maryland.

27. Early that morning, Special Agent Hicks drove to a designated point to meet the motorcade—the right shoulder of Interstate 295-N (the Baltimore-Washington Parkway) at exit 198. Special Agent Hicks was in his Secret Service-issued vehicle.

28. At or around 6:00 a.m., Special Agent Hicks spoke with the Secret Service Assistant Detail Leader for Secretary Johnson's motorcade (by cell phone) to both confirm that he was in position, as well as that the protectee's motorcade was en route as scheduled.

29. As Special Agent Hicks sat in his car and waited for the Secret Service motorcade to approach, he was not doing, and had not done, anything unlawful. He was merely sitting in his work-issued vehicle, on official duty as a federal law enforcement agent, waiting to complete his official Secret Service assignment.

30. Shortly after Special Agent Hicks had confirmed his location with the Secret Service Assistant Detail Leader, Defendant Officer Ferreyra, a white USPP officer who had been driving on the Baltimore-Washington Parkway, stopped his USPP vehicle behind Special Agent Hicks, got out of his car, and approached Special Agent Hicks's government vehicle. Officer Ferreyra was in USPP uniform. Upon approaching the vehicle, Officer Ferreyra drew his gun, pointed his weapon at Special Agent Hicks, and began screaming at him.

31. Special Agent Hicks immediately and calmly identified himself as a Secret Service Agent. He explained that he was on duty and was waiting to accompany Secretary Johnson's protection motorcade. He requested permission to retrieve his federal law enforcement credentials. Special Agent Hicks slowly produced his Secret Service commission

7

book, which contained his official Secret Service badge and photo-identification. He also produced the registration for his government vehicle, which similarly identified him as being with the Secret Service. Special Agent Hicks rolled down his car window and provided Defendant Officer Ferreyra with his identification.

32. With his gun still pointed at Special Agent Hicks, Officer Ferreyra inspected Special Agent Hicks's credentials. Officer Ferreyra both confirmed and acknowledged that Special Agent Hicks, in fact, worked as a federal law enforcement agent with the Secret Service.

33. Despite confirming and acknowledging that Special Agent Hicks was a law enforcement officer, and having no probable cause or even a reasonable suspicion to believe that Special Agent Hicks had done or was doing anything unlawful, Officer Ferreyra continued to seize him. Officer Ferreyra kept his gun pointed at Special Agent Hicks, reached through the car window to take Special Agent Hicks's Secret Service-issued weapon, and continued to detain him on the side of the road.

34. Throughout the time that Officer Ferreyra detained Special Agent Hicks, Officer Ferreyra yelled and spoke to him in a degrading manner. When Special Agent Hicks asked if he could return to his Secret Service duties and prepare for the protectee's motorcade's arrival, Officer Ferreyra told him that he was not free to leave and that it would be "one motorcade you won't be participating in." When Special Agent Hicks asked for an explanation as to why he was being detained, Officer Ferreyra demanded that he "shut up" and told him that he was not allowed to leave his vehicle.

35. Special Agent Hicks again attempted to explain that the cabinet Secretary's protective motorcade was approaching and that he needed to contact a Secret Service

supervisor to let him know that he was being detained and would thus be unable to join the motorcade as required by his assignment and Secret Service protocol. Defendant Officer Ferreyra told Special Agent Hicks that he "did not care who he contacted." Special Agent Hicks contacted a supervisor to inform him that he was being detained by USPP.

36. Another (white) USPP officer, Defendant Officer Brian Phillips came to the location to assist Officer Ferreyra in detaining Special Agent Hicks. Like Officer Ferreyra, Officer Phillips was in USPP uniform and armed. Officer Phillips approached Special Agent Hicks in his car and similarly began yelling at him. Special Agent Hicks, who had contacted another Secret Service supervisor at this point, told Officer Phillips that his supervisor was on the line. Officer Phillips told him that he did not care.

37. During the time that he detained Special Agent Hicks, Officer Phillips similarly acknowledged that Special Agent Hicks was a federal law enforcement officer on duty. Officer Phillips even complained to Special Agent Hicks about the United States Secret Service being within what he alleged to be USPP's jurisdiction. Nonetheless, Officer Phillips continued to detain Special Agent Hicks, without probable cause or any reasonable, articulable suspicion of criminal activity.

38. At various points during the time that Special Agent Hicks was detained, Officer Ferreyra and Officer Phillips were in close proximity to Special Agent Hicks and were simultaneously yelling at him and talking to him in a degrading manner. Throughout his detention, Special Agent Hicks remained calm and complied with any directives that he was given. Repeatedly, Special Agent Hicks asked Defendants if he could be released so that he could participate in the Secret Service motorcade, both Defendants told him that he was not free to leave.

39. Additional USPP officers arrived at the scene. At one point, there were three USPP police cars and multiple officers at the scene in connection with Special Agent Hicks's unlawful detention.

40. After Special Agent Hicks had been detained for well over thirty minutes—and for no reason at all—Secretary Johnson's Secret Service motorcade began to approach. The motorcade reduced speed to allow Special Agent Hicks to join as required by his protective assignment, however, Defendants, who remained armed and in close proximity to Special Agent Hicks, refused to release him so that he could join.

41. Accordingly, the motorcade approached and traveled through Maryland without Special Agent Hicks. One USPP officer on the scene mockingly waved his hand goodbye at the Secret Service motorcade as it passed and while Special Agent Hicks remained held on the side of the road.

42. At this point, well over thirty minutes after first seizing Special Agent Hicks, Defendants had ample opportunity to verify Special Agent Hicks's identity and status as a federal law enforcement agent and, in fact, confirmed and acknowledged that he was a Secret Service Agent. The fact of his specific assignment had also been confirmed by the passage of the Secret Service motorcade. Defendants were also aware of Special Agent Hicks's real-time communications with his Secret Service supervisors. Nothing had happened to provide Defendants with any probable cause or reasonable suspicion that Special Agent Hicks was engaged in anything remotely criminal in nature to justify his prolonged detention. Nonetheless Defendants continued to detain Special Agent Hicks without any justification or explanation.

43. At some time after cabinet Secretary Johnson's motorcade passed, and while Special Agent Hicks remained detained, USPP Sergeant T.F. Wallace, from USPP's Anacostia precinct in Washington, D.C., arrived on the scene. Sergeant Wallace spoke with Special Agent Hicks's supervisor (who was still on the line), admitted that Officers Ferreyra and/or Phillips had told him that Special Agent Hicks was a federal law enforcement officer, and even acknowledged that Special Agent Hicks had not done anything criminal in nature. Yet, Sergeant Wallace provided no explanation for the reason Defendants had detained Special Agent Hicks for a prolonged period of time.

44. It was not until at least an hour after Officer Ferrerya first approached Special Agent Hicks with his gun drawn that he finally returned Special Agent Hicks's Secret Service-issued badge and weapon and Special Agent Hicks was released.

45. In total, Defendants collectively detained Special Agent Hicks on the side of the road for at least an hour, without probable cause and no reasonable suspicion to believe that he had done anything unlawful.

46. As Special Agent Hicks was driving away, headed north-bound on the Baltimore-Washington Parkway, Defendant Officer Phillips drove behind him in his USPP vehicle, signaled for him to pull over, and again detained him on the side of the road. This second, successive detention was similarly effectuated without any reasonable suspicion that Special Agent Hicks had done anything wrong. In fact, at the time that Officer Phillips detained Special Agent Hicks for a second time, Special Agent Hicks had been complying with all laws and did nothing that warranted being stopped by the police.

47. Again, Officer Defendant Phillips retrieved Special Agent Hicks's identification and car registration (despite just having had possession of these documents) and continued to

talk to him in a demeaning and degrading tone. Officer Phillips, for example, told Special Agent Hicks that he was "mouthing off" when Special Agent Hicks had done nothing other than calmly ask permission to be released so that he could attend to his duties as a federal law enforcement officer.

48. It was not until another USPP officer on the scene spoke to Officer Phillips that Officer Phillips returned to Special Agent Hicks's car to release him—but not before throwing his identification and registration at him.

49. Special Agent Hicks did nothing whatsoever to justify being detained on the side of the road for at least an hour or being subsequently stopped a second time for absolutely no reason at all. Based upon the absence of probable cause, or even any reasonable suspicion to justify his prolonged seizure, it appears that Special Agent Hicks was singled out for unlawful treatment because of his race. The totality of the circumstances, including the objectively hostile way in which Defendants treated Special Agent Hicks and the lack of any legitimate explanation justifying Defendants' conduct reveals Defendants' discriminatory motives.

## INJURY TO PLAINTIFF

50. Throughout his detention, Defendants mocked, demeaned, and degraded Special Agent Hicks. Further, because he was unlawfully (and repeatedly) detained, Special Agent Hicks was unable to perform his official duties as part of Secretary Johnson's motorcade.

51. As a result of his unlawful detention, Special Agent Hicks suffered, and continues to suffer, significant embarrassment, humiliation, emotional distress, and the deprivation of his constitutional rights. In addition to the manner in which Defendants spoke to and treated him, it was particularly humiliating to be held on the side of the road as his colleagues (other Secret

Service agents working the motorcade assignment) passed by. That he was subjected to unlawful treatment because of his race compounds his emotional distress.

52. Through the actions described above, Defendants acted intentionally, maliciously, and with willful, wanton, callous, and reckless disregard for Special Agent Hicks's constitutional and civil rights.

## CAUSE OF ACTION

**Violation of Fourth Amendment to the U.S. Constitution, Unreasonable Seizure** (*Bivens*)

53. Special Agent Hicks repeats and incorporates by reference all allegations contained in paragraphs 1 through 52 as if fully set forth herein.

54. The Fourth Amendment to the United States Constitution prohibits unreasonable seizures.

55. Defendants acted intentionally and unlawfully in detaining Special Agent Hicks with no probable cause or even a reasonable, articulable suspicion that he had engaged in criminal activity to justify his prolonged seizure.

56. Defendants acted under color of law and in the performance of their official duties under federal law in detaining Special Agent Hicks.

57. Defendants' conduct violated Special Agent Hicks's clearly established constitutional right to be free from unreasonable seizure.

## PRAYER FOR RELIER

WHEREFORE, Plaintiff respectfully prays that the Court grant it the following relief:

(1) enter a declaratory judgment that the foregoing acts violated Plaintiff's Fourth Amendment rights under the United States Constitution;

(2) award compensatory damages to Plaintiff in an amount to be determined by the jury that would fully compensate Plaintiff for his injuries caused by the conduct of Defendants alleged herein;

(3) award punitive damages to Plaintiff in an amount to be determined by the jury that would punish Defendants for their willful, wanton, and reckless conduct alleged herein and that would effectively deter Defendants from engaging in similar conduct in the future;

(4) award any and all costs and/or fees incurred in this action that are available under law; and

(5) order such other relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable as of right.

Dated: July 8, 2016

Respectfully submitted,

/s/ John P. Relman
John P. Relman
Jennifer I. Klar *pro hac vice to be sought*
Jia M. Cobb *pro hac vice to be sought*
RELMAN, DANE & COLFAX PLLC
1225 19th St., NW, Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
jrelman@relmanlaw.com
jklar@relmanlaw.com
jcobb@relmanlaw.com

*Attorneys for Plaintiffs*