## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | | |
|---|---|---|
| **NATHANIEL HICKS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. 8:16-cv-02521-PWG |
| | ) | |
| **GERALD L. FERREYRA**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

### DEFENDANTS' PARTIAL MOTION TO DISMISS OR,
### IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants Officers Gerald Ferreyra ("Ofc. Ferreyra") and Brian Phillips ("Ofc. Phillips") (collectively Defendants), pursuant to FED. R. CIV. P. 12(b) and this Court's paperless Order of November 29, 2016, *see generally* [ECF No. 33], hereby move this Court for an order partially dismissing this case with prejudice, or, in the alternative, granting them summary judgment. This case, in which Plaintiff Nathaniel Hicks ("Agent Hicks" or "Plaintiff") seeks vindication of a bruised ego resulting from quarreling among interagency law enforcement officers, does not involve an infringement upon his constitutional rights and therefore forms an improper basis for a cause of action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). More specifically, under the circumstances alleged in the Complaint, the actions of Ofc. Ferreyra (and those of Ofc. Brian Phillips taken in support of Ofc. Ferreyra) were not constitutionally unreasonable and Plaintiff's asserted constitutional rights were not "clearly established." Defendants are therefore entitled to qualified immunity from Plaintiff's claims arising out of the

first stop alleged in his Complaint.[1]  This dispute, to the extent one exists, is a matter best left to internal agency procedures for training (and, if appropriate, discipline), not federal civil-rights litigation. For these reasons, as discussed herein, Plaintiff's claims against Defendants arising from the first stop alleged in his Complaint should be dismissed.

## ALLEGATIONS OF THE COMPLAINT AND OTHER FACTS

Agent Hicks alleges that, on Saturday, July 11, 2015, at approximately 6 a.m., while on-duty as a special agent with the U.S. Secret Service, he was parked in the right shoulder of the northbound lanes of Interstate 295 (in the section of highway known as the "Baltimore-Washington Parkway") near exit 198 in Laurel, Maryland.  He was waiting, pursuant to an official assignment, to accompany a motorcade traveling along Baltimore-Washington Parkway from the District of Columbia to New Jersey, and was dressed in civilian clothes, driving an unmarked

---

[1] For all the reasons discussed herein, Ofc. Phillips is entitled to qualified immunity for all actions taken from his arrival on the scene until Plaintiff was given back his weapon and drove away at the conclusion of the first stop.  However, Plaintiff also alleges that Ofc. Phillips stopped him a second time even though he alleges that he "had been complying with all laws and did nothing that warranted being stopped by the police."  *See* [ECF No. 1] at 11.  Ofc. Phillips is confident that the evidence will show that Agent Hicks was driving along the highway while – presumably because of his extreme agitation about the previous stop – excitedly talking on his handheld cell phone, thereby preventing him from keeping his vehicle safely in his lane of travel.  Nonetheless, Ofc. Phillips recognizes that, based upon the allegations presented in the Complaint, he currently lacks a basis to dismiss all claims against him, he filed an Answer on October 28, 2016.  *See generally* [ECF No. 26].

vehicle, and possessed a loaded handgun. *See* Aff. of G. Ferreyra, Oct. 25, 2016, attached hereto as **Exhibit A**.[2]

Agent Hicks alleges that Ofc. Ferreyra – who is Hispanic[3] – of the U.S. Park Police pulled up behind his car, got out, and, upon approach and apparently without provocation, immediately "drew his gun, pointed his weapon at [Agent Hicks], and began screaming at him."[4] Agent Hicks identified himself as a Secret Service agent, provided such credentials to Ofc. Ferreyra, and stated that he was on-duty and waiting for a motorcade. Ofc. Ferreyra nonetheless kept his weapon pointed at Agent Hicks and took possession of the latter's loaded firearm (which, although the Complaint does not detail how, Ofc. Ferreyra was nonetheless able to obtain without issue). Agent Hicks then contacted his supervisor and informed him of the

---

[2] As noted *infra* in footnote 5 *infra*, Plaintiff's Complaint (presumably to avoid dismissal) carefully avoids mentioning these details, though they are presumably undisputed – though, curiously, Plaintiff alleges that he was in a "Secret Service-issued vehicle," *see* [ECF No. 1] at 2, 7, suggesting that the vehicle bore some sort of official markings (which it did not). Should the Court believe that it is necessary to consider these facts in ruling upon this Motion, it should convert this Motion into one for summary judgment. FED. R. CIV. P. 12(b), 12(d) & 56.

[3] Plaintiff incorrectly alleges that Ofc. Ferreyra is white. *Compare* [ECF No. 1] at 7 *with* Ex. A.

[4] Plaintiff's Complaint carefully avoids mention of other critical facts that could either demonstrate probable cause for Ofc. Ferreyra's actions or, at minimum, explain his alleged bizarrely irrational behavior. Because it is assumed that Plaintiff will characterize these as disputed facts, Ofc. Ferreyra does not rely upon them in this Motion. Nevertheless, should this case proceed beyond to discovery, the evidence will show that Agent Hicks was found asleep in an unmarked and unwashed vehicle that was marred with body damage, wearing civilian clothes, and with a loaded firearm laying openly on the front passenger seat. *See* Ex. A. Consideration of these important circumstances may perhaps clarify why Ofc. Ferreyra drew his weapon and "began screaming" at the sleeping driver, in civilian clothes, and in an unmarked vehicle, with a loaded firearm displayed in plain view.

situation, while Ofc. Ferreyra radioed for his supervisor to be sent to the scene to finish the investigation.  *See* Ex. A.[5]

After a second U.S. Park Police officer – Ofc. Phillips – arrived at the scene, Agent Hicks called a second Secret Service supervisor and explained his situation. Soon, additional officers of the U.S. Park Police arrived on scene.  After about thirty (30) minutes elapsed – giving "ample opportunity to verify [Plaintiff's] identity and status as a federal law enforcement agent" – since Ofc. Ferreyra first encountered Agent Hicks, the Secret Service motorcade approached, but Ofcs. Ferreyra and Phillips would not let Agent Hicks leave to join it.  Eventually, U.S. Park Police Sgt. T.F. Wallace then arrived and spoke with the Secret Service supervisor who was on the phone.  Approximately one (1) hour after Ofc. Ferreyra first encountered Agent Hicks, the latter's credentials and weapon were returned to him, and he was released from the scene.

## ARGUMENT

Plaintiff's allegations appear rooted in his apparent anger that officers from another federal agency (which, Defendants contend the evidence will show, he believed to be inferior to his own) refused to – based solely upon Plaintiff's word and display of credentials – unquestionably assume that Plaintiff was, in fact, an on-duty Secret Service agent who could legally carry and transport a loaded firearm. Unwilling to keep this dispute – to the extent one exists – within the appropriate realm of the internal procedures of both agencies, Plaintiff instead filed this lawsuit

---

[5] *See supra* n. 3.

alleging that he did nothing unlawful, and that his constitutional rights were violated when he was temporarily detained by U.S. Park Police.

But whether Plaintiff was doing anything unlawful is <u>irrelevant</u> to whether Defendants can be held liable under *Bivens*. Rather, the relevant inquiry is whether there was probable cause for Defendants – and their fellow U.S. Park Police colleagues – to complete a reasonable investigation under the circumstances, and whether it was "clearly established" that Plaintiff had a right to carry and transport a loaded firearm in an unmarked vehicle on the shoulder of the Baltimore-Washington Parkway. Put more specifically, this inquiry should turn on whether it was "clearly established" that Defendants, even if they were unfamiliar with Secret Service credentials, had a duty to automatically <u>assume</u> their validity and, with it, Plaintiff's assertions.[6] Indeed, even if Defendants <u>should</u> have so assumed, it would still need to be "clearly established" that a Secret Service agent (such as Agent Hicks) has a *carte blanche* right to carry and transport a loaded firearm. In truth, a review of the four corners of Plaintiff's Complaint reveals that none of these things were "clearly established": for example, Ofc. Ferreyra called a supervisor to come to the scene to sort out what should be done and was <u>not</u> immediately instructed by that supervisor to release Agent Hicks from the scene

---

[6] Should the Court deny this Motion, it will subsequently analyze other facts Defendants will offer that seem inconsistent with a person's status as a Secret Service officer, including, for example, Agent Hicks, wearing civilian clothes, asleep in an unmarked, unwashed, and damaged vehicle with a firearm openly displayed in the front passenger seat. Defendants will also establish that the U.S. Park Police is regularly given notice of any Secret Service motorcades traveling on I-295, but it had not been given any such notice regarding the motorcade Agent Hicks was purportedly waiting for that morning.

based on the latter's mere assertion of being an on-duty Secret Service officer; rather, the supervisor first conversed with Agent Hicks' supervisor to verify enough information to first make that determination.[7]

In short, notwithstanding Plaintiff's aggravation, his right (assuming they exist) to openly carry and transport a loaded firearm does not vitiate the existence of probable cause justifying Defendants' actions during the first alleged stop. As such, Plaintiff's rights to carry and transport loaded handguns were not "clearly established" to Defendants, who reasonably lacked knowledge of specific Secret Service allowances, rights, and protocol.[8] Accordingly, there was no violation of Plaintiff's constitutional rights, and Defendants are entitled to qualified immunity for Plaintiff's claims arising from the first stop.

## I. This Motion Tests The Complaint's Legal Sufficiency.

A motion to dismiss under Rule 12(b)(6) provides "a defendant with a mechanism for testing the legal sufficiency of the complaint." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F. 2d 1083, 1086 (4th Cir. 1979). The court will view adequately pled facts "in the light most favorable to the plaintiff." *Lambeth v. Bd. of Comm'rs of Davidson Co.*, 407 F.3d 266, 268 (4th Cir. 2005). However,

---

[7] Indeed, should discovery be necessary, Ofc. Ferreyra will rely on documents related to an internal investigation of his conduct, which concluded that, "once the scene was secure" by the removal of Plaintiff's firearm, Ofc. Ferreyra "performed appropriate follow-up" by calling his supervisor to the scene to confirm whether Plaintiff was acting lawfully.

[8] Defendants contend that discovery will show that the U.S. Park Police later issued guidance to its officers on how to address interactions with other individuals on the highway who purport to be law-enforcement officials from other agencies. This would further demonstrate that Plaintiff's asserted rights were not "clearly established" at the time of the July 11, 2015 stop.

"[f]actual allegations must be enough to raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 268 (1986). The grounds for the relief sought by Plaintiff must be "more than labels and conclusions and a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555.

## II. Qualified Immunity Applies Unless The Officers Were "Plainly Incompetent" Or Acted With Malicious Intent.

A federal law enforcement officer has qualified immunity to civil liability for actions taken in the performance of his duties unless those actions violated the plaintiff's constitutional rights, and those rights were "clearly established." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity is an immunity to suit rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects from pretrial matters – like discovery – such that immunity questions should be resolved "at the earliest possible stage in litigation[.]" *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996).

For a constitutional right – "defined at the appropriate level of specificity" – to be clearly established, it must be "basic" and "unquestioned," *Wood v. Strickland*, 420 U.S. 308, 322 (1975), and its existence "apparent" to a reasonable police officer. *Wilson*, 526 U.S. at 615. For a law enforcement officer to be deprived of qualified immunity, it must have been reasonable for him to have received "prior guidance" that would cause him to know that his "contemplated action was improper." *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 357 (4th Cir. 2010). Qualified immunity

protects "all but the plainly incompetent," *Malley v. Briggs*, 475 U.S. 335, 341 (1986); negligent behavior is not sufficient to deprive an officer of qualified immunity. *Groh v. Ramirez*, 540 U.S. 551, 565 (2004). As such, an officer "will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 507 (1978); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."). This doctrine extends to protect law enforcement officers' reasonable belief regarding the existence of probable cause. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Reasonableness is measured objectively and is a question of law. *Id.*

### III. **Plaintiff's Constitutional Rights Were Not Violated.**

The Fourth Amendment prohibits unreasonable searches and seizures. For a seizure by a law enforcement officer to be reasonable, it generally must be supported by probable cause, *Schultz v. Braga*, 290 F. Supp. 2d 637, 648 (D. Md. 2003), described as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense," *Pritchett v. Alford*, 973 F. 2d 307. Whether probable cause exists is an objective determination. *Braga*, 290 F. Supp. 2d at 649.

The Baltimore-Washington Parkway is within a "park area," that is, within an area of land administered by the Secretary of the Interior through the National Park System. *See* 36 C.F.R. § 1.4. It is therefore illegal to violate Maryland law on the Baltimore-Washington Parkway. *See id.* at § 4.2. As set forth in MD. CODE

ANN., CRIM. LAW § 4-203, "a person may not wear, carry, or transport a handgun, whether concealed or open, on or about the person" or "in a vehicle traveling on a road or parking lot generally used by the public, highway, waterway, or airway of the State[.]" *Id.* Ofc. Ferreyra's viewing Agent Hicks' loaded firearm in full display inside of the vehicle immediately created probable cause to detain him based on a suspected violation of this law. In determining whether a constitutional violation occurred, the question is whether, at some point, that probable cause was extinguished.

Plaintiff allegedly showed Ofc. Ferreyra his purported credentials identifying him as an agent with the U.S. Secret Service. Section 4-203(b)(1)(i) provides that the Section's proscriptions do not apply to a person who is "authorized <u>at the time and under the circumstances</u> to wear, carry, or transport the handgun as part of the person's official equipment, and is a law enforcement official of the United States[.]" *Id.* (emphasis added). As a result, Plaintiff's assertion that he was a Secret Service agent could provide a possibly innocent explanation for his openly carrying and transporting a loaded firearm in a vehicle. However, "[t]he possibility of an innocent explanation <u>does not</u> vitiate properly established probable cause." *Sennett v. United States*, 667 F. 3d 531, 537 (4th Cir. 2012) (emphasis added). Rather, law enforcement officers "must undertake an objectively reasonable investigation with respect to the information known to them in light of the circumstances they face." *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 842 (D. Md. 2012) (quoting *Gooden v.* n *Howard Cnty.*, 954 F. 2d 960, 965 (4th Cir. 2002)). Indeed, the court in *McDaniel*

9

noted that law enforcement officers are "not required to take [a driver] at his word that he was lawfully transporting his firearm." *Id.* at 844. There is thus no constitutional violation in circumstances when law enforcement officers identify "circumstances that might have aroused … their suspicions" that the carrying and transporting of the handgun was not lawful. *Id.*

It therefore follows that Defendants were not required to blindly accept Plaintiff's assertions that he was a Secret Service agent or that he was on-duty, particularly in light of circumstances reasonably casting suspicion on these assertions, such as Plaintiff's wearing civilian clothing and being in an unmarked vehicle.[9] But even if Defendants had unquestionably assumed the authenticity of Plaintiff's credentials, such assumptions do not automatically justify Plaintiff's carrying and displaying a loaded firearm. Indeed, the only way that Ofc. Ferreyra could know, upon his initial engagement with Agent Hicks, that the law had not been violated is if he omnisciently knew the circumstances under which a Secret Service agent could lawfully possess such a firearm.[10] Plaintiff's own allegations demonstrate, however, that Ofc. Ferreyra did not bear such omniscience since he called a supervisor to complete the investigation.

---

[9] Not to mention, as discussed *supra,* other pertinent facts omitted from the Complaint that Defendants intend to prove, such as that Agent Hicks was found asleep in an unmarked, unwashed, and damaged vehicle, plus that the U.S. park Police had not received customary notice of a motorcade scheduled along the highway for that morning.

[10] Audio recordings of Ofc. Ferreyra's radio calls during the incident will, if necessary, evidence his suspicion and justify further investigation regarding the existence of the purported motorcade.

In sum, there was probable cause to detain Plaintiff until the U.S. Park Police determined to its satisfaction that he was indeed a Secret Service agent, was on-duty, and had the legal right to carry and transport his loaded firearm at the time and under the circumstances at issue. This determination was the result of an appropriately reasonable investigation culminating in Sgt. Wallace's communications with Plaintiff's supervisor, after which Plaintiff was immediately released. Defendants did not violate <u>any</u> of Plaintiff's constitutional rights.

## IV. Plaintiff's Right To Carry And Transport A Firearm In The Vehicle Was Not "Clearly Established."

Assuming *arguendo*, even if Plaintiff had a right to carry and transport his loaded firearm at the time and under the circumstances involved, that right was not "clearly established." Even if one could generally assume that a U.S. Secret Service agent has an inherent right to carry and transport a loaded firearm, it is far from "basic," "unquestioned," and "apparent" as to the times and circumstances at which such an agent can exercise those rights. And even if Defendants (both Ofc. Ferreyra in his initial approach, and Ofc. Phillips in providing subsequent support to Ofc. Ferreyra) were mistaken in harboring doubts as to whether Plaintiff was, in fact a Secret Service agent, on duty, waiting for a motorcade, and entitled to carry and transport his loaded firearm at that time and under those circumstances, such negligent mistakes would not deprive him of qualified immunity. Rather, the Court would have to believe that Defendants were "plainly incompetent" by not taking all of Plaintiff's assertions at face value and categorically assuming everything he was doing was lawful.

The Court must also reasonably expect that the U.S. Park Police would give their officers guidance on, among other things: (a) what Secret Service credentials look like; (b) how to determine on sight whether such credentials are authentic; (c) when a Secret Service agent might be alone and in civilian clothes and in an unmarked vehicle yet still be on duty; and (d) when a Secret Service agent is allowed to possess, carry, and transport a loaded handgun. Indeed, that none of these things were "clearly established" is evidenced by the fact that Ofc. Ferreyra requested that his supervisor travel to the scene to complete the investigation and decide how to resolve the situation. Moreover, not only were these matters not clearly established to Ofc. Ferreyra, but they were also not clearly established to Ofc. Phillips, other responding officers, or Sgt. Wallace, all of whom arrived and continued the investigation rather than immediately releasing Plaintiff. Because the rights Plaintiff asserts were violated were not clearly established, Defendants have qualified immunity.

## CONCLUSION

It is, of course, not ideal for federal law enforcement officers to be mistakenly delayed in the performance of their duties by other federal law enforcement officers. Defendants do not dispute that, in some cases, it very well may be good policy for federal law enforcement officers to learn protocol applicable to other law enforcement agencies – particularly in this region, where interactions between different agencies is likely to occur. Defendants agree that their agency and the U.S. Secret Service could establish protocols and training to avoid these types of

mistaken confrontations and jurisdictional tangles in the future (indeed, such guidance was subsequently issued, see footnote 8 *supra*).

However, what might be good policy has nothing to do with Plaintiff's constitutional rights, nor justify a *Bivens* action seeking money damages, and certainly should not vanquish the qualified immunity that Defendants enjoy, even were they to exercise erroneous judgment and make potentially negligent decisions. Wounded pride and exasperation notwithstanding, a U.S. Park Police officer – such as Defendants – are allowed to investigate to their satisfaction whether Agent Hick was indeed an on-duty U.S. Secret Service agent before confirming that nothing illegal had occurred or was occurring. A flash of supposed Secret Service credentials does not preclude other law enforcement officers from doing their jobs to verify that persons parked in nontraditional locations and possessing and transporting loaded firearms are acting lawfully before being released.

Given the circumstances alleged, Defendants had probable cause that a crime had occurred or was occurring. Accordingly, there was no violation of Plaintiff's constitutional rights. Moreover, even if Plaintiff's privilege to openly carry and transport a loaded firearm was not fully and immediately respected, resulting in a brief detention and disruption of his work, at no point did Defendants infringe upon Agent Hicks' "clearly established" rights. Both Defendants are thus entitled to qualified immunity for their actions related to the first stop alleged in the Complaint, and any claims arising therefore should therefore be dismissed.

Dated: December 19, 2016          Respectfully submitted,

                                    /s/

Andrew C. White, Esq. (Bar No. 08821)
Edward P. Parent, Esq. (Bar No. 29370)
SILVERMAN THOMPSON SLUTKIN WHITE, LLC
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
Tel:  (410) 385-2225
Fax:  (410) 547-2432
awhite@mdattorney.com
nparent@mdattorney.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of December, 2016, a copy of the foregoing document was filed electronically in this Court, and thus served via the Court's electronic filing system, Case Management/Electronic Case Files (CM/ECF), upon the following counsel of record:

> John P. Relman, Esq. (Bar No. 11482)
> Jennifer I. Klar, Esq. (admitted *pro hac vice*)
> Jia M. Cobb, Esq. (admitted *pro hac vice*)
> RELMAN, DANE & COLFAX, PLLC
> 1225 19th Street, N.W., Suite 600
> Washington, D.C. 20036
>
> *Counsel for Plaintiff*

Dated: December 19, 2016                 /s/ _____
                                                      Edward P. Parent, Esq. (Bar No. 29370)