# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## *Southern Division*

NATHANIEL HICKS

          Plaintiff,

v.

OFFICER GERALD L. FERREYRA, *et al.*

          Defendants.

Civil Action No.: 8:16-cv-2521-PWG

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND...........................................................................................2

LEGAL STANDARD......................................................................................................5

ARGUMENT ..................................................................................................................6

I.      Defendants Are Not Entitled To Qualified Immunity
        Under the Facts Alleged in Hicks's Complaint ....................................................6

        A.       Special Agent Hicks's Complaint Adequately
                 Alleges a Violation of His Fourth Amendment Rights................................7

        a.       *Special Agent Hicks's Factual Allegations Demonstrate
                 That Defendants Seized Him Without Lawful Justification* ..............................9

        b.       *Defendants' Arguments to the Contrary Should be Rejected* ..........................12

        B.       Defendants' Violation of Special Agent Hicks's
                 Constitutional Rights Is Clearly Established ............................................17

II.     Defendants' Motion For Summary Judgment in the Alternative
        Should Similarly Be Denied .................................................................................21

CONCLUSION..............................................................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*A.S. Abell Co. v. Chell,* 412 F.2d 712 (4th Cir. 1969) ...................................................5, 13

*Bailey v. Kennedy,*349 F.3d (4th Cir. 2001) ......................................................9, 12, 13, 19

*Bellotte v. Edwards*, 629 F. 3d 415 (4th Cir. 2011) ..........................................................21

*Blue v. Prince George's Cty.,* 434 Md. 681 76 A.3d 1129 (2013) ...................................20

*Carter v. Baltimore Cty., Maryland*, 39 F. App'x 930 (4th Cir. 2002) ....................5, 6, 24

*Daniels v. New Germany Fund, Inc.*,

No. CIV.A. MJG-05-1890 (D. Md. Mar. 29, 2006) ......................................................5, 13

*Doe v. Broderick*, 225 F.3d 440 (4th Cir. 2000)...............................................................6, 7

*Edwards v. City of Goldsboro,* 178 F.3d 231 (4th Cir. 1999)........................................5, 21

 *Florida v. Royer*, 460 U.S. 491 (1983) ...............................................................................9

*Gay v. Wall,* 761 F.2d 175 (4th Cir. 1985) .....................................................................5, 24

*Graham v. Gagnon*, 831 F.3d 176 (4th Cir. 2016) ..................................................... *passim*

*Henry v. Purnell*, 652 F.3d 524 (4th Cir. 2011)....................................................................6

*Ibarra v. United States,* 120 F.3d 472 (4th Cir. 1997)..........................................................5

*Logsdon v. Hains,* 492 F.3d 334 (6th Cir. 2007) ................................................................16

*Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006) ..................................................................21

*Malley v. Briggs*, 475 U.S. 335 (1986) .................................................................................6

*McDaniel v. Arnold*, 898 F.Supp.2d. 809 (D. Md. 2012) ................................8, 16, 19, 20

*Merchant v. Bauer*, 677 F.3d (4th Cir. 2012) ........................................................... *passim*

*Miller v. Prince George's Cnty.,* 475 F.3d 621  (4th Cir. 2007)........................................8

*Pinder v. Johnson*, 54 F.3d 1169 (4th Cir. 1995) .............................................................21

*Pritchett v. Alford*, 973 F.2d 307 (4th Cir. 1992) .....................................................8, 15, 20

*Russell v. Russel Motor Cars Inc.*, 28 F. Supp. 3d 414 (D. Md. 2014) ..............................5

*Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)........................................................18, 20

*Terry v. Ohio*, 392 U.S. 1 (1968) .........................................................................................8

*Turmon v. Jordan*, 405 F.3d 202 (4th Cir. 2005)....................................................... *passim*

*United States v. Digiovanni*, 650 F.3d 498 (4th Cir. 2011) ..............................................16

*United State v. Leshuk*, 65 F.3d 1105(4th Cir. 1995) ...........................................................9

*United States v. Lanier*, 520 U.S. 259 (1997) ...................................................................21

*United States v. Sharpe,* 470 U.S. 675 (1985) ..................................................................15

*United States v. Sokolow*, 490 U.S. 1 (1989) ......................................................................8

*United States v. Struckman*, 603 F.3d 731 (9th Cir. 2010) ................................................8

*Vathekan v. Prince George's County*, 154 F.3d 173 (4th Cir. 1998) ......................8, 23, 26

*Williams v. Branker,* 462 F. App'x 348 (4th Cir. 2012) .....................................................5

**<u>INTRODUCTION</u>**

Defendants' conduct in this case was both unreasonable and unlawful. Defendants Gerald Ferreyra and Brian Phillips, officers of the United States Park Police (USPP), unlawfully detained Special Agent Nathaniel Hicks, who they knew to be an on-duty Secret Service Agent waiting to lead the motorcade of a Cabinet Secretary, without any legally sufficient cause or justification. For at least one hour, Defendants held him on the side of the road, yelled at him, berated him, told him to "shut up" when he asked if he could be released to return to his federal duties, and publicly humiliated him. Affirming the impropriety of Defendants' conduct, after Special Agent Hicks was finally released from Defendants' custody, one Defendant (Phillips) stopped him again, for no reason other than to continue his earlier harassment. Defendants' actions precluded Special Agent Hicks from leading a Cabinet Secretary's motorcade as scheduled—which could have had severe, security consequences that unnecessarily put a high-ranking federal official at risk.

In claiming that their conduct is somehow protected by qualified immunity, Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (Doc. 37), does nothing more than ignore Special Agent Hicks's well-pled allegations, ask this Court to consider Defendants' unsubstantiated and disputed version of the "facts" over those alleged by Hicks, and present (inaccurate) opinions regarding Special Agent Hicks's purported motives in bringing this lawsuit that are wholly irrelevant to this Court's analysis. Defendants' attempt to make light of their conduct aside, Hicks's Complaint sufficiently alleges that he was unlawfully detained—without any cause or justification—in violation of clearly established law that would have made it clear

to any reasonable officer in Defendants' position that his conduct was unlawful. Accordingly, Defendants' Motion must be denied.

## FACTUAL BACKGROUND

On July 11, 2015, Defendants seized Plaintiff Nathaniel Hicks, an on-duty United States Secret Service Special Agent, for at least one hour, without any legal cause or justification.

Special Agent Hicks had been assigned as the Baltimore Lead Advance Agent for Department of Homeland Security Secretary Jeh Johnson's Secret Service protection motorcade. *See* Complaint (Doc. 1) at ¶ 24. As the Baltimore Lead Advance Agent, Special Agent Hicks was responsible for accompanying Secretary Johnson into and through Maryland. *Id.* at ¶ 26. Accordingly, early that morning, Special Agent Hicks drove to the designated point—the right shoulder of the Baltimore-Washington Parkway at exit 198—to wait for the Secretary's motorcade to cross into Maryland (from Washington, DC) so that he could lead it. *Id.* at ¶¶ 27, 29.

As he sat in his car waiting for the oncoming motorcade, Defendant Officer Ferreyra, who had been driving on the Baltimore-Washington Parkway, stopped his police car behind Special Agent Hicks's car, got out of his police car, and approached Special Agent Hicks with his gun drawn. *Id.* at ¶ 30.

Special Agent Hicks *immediately* identified himself to Defendant Ferreyra as a Secret Service Agent, explained his business in the area, presented his valid Secret Service badge and photo-identification, and also provided the registration for his Secret Service-issued car (which similarly identified him as being with the Secret Service). *Id.* at ¶ 31. Defendant Ferrerya inspected Special Agent Hicks's credentials. *Id.* at ¶ 32. Despite both confirming and

*acknowledging* that Special Agent Hicks was, in fact, a Secret Service Agent, Defendant Ferreyra inexplicably continued to detain him. *Id.* at ¶ 33.

Defendant Ferrerya was unnecessarily hostile to Special Agent Hicks as he held him on the side of the road. *See, e.g., id.* at ¶¶ 34-35. Throughout the time that Defendant Ferreyra detained Special Agent Hicks, Defendant Ferreyra yelled at him and spoke to him in a degrading manner. *Id.* at ¶ 34. When Special Agent Hicks asked if he could return to his Secret Service duties, Defendant Ferreyra refused by telling him that it would be "one motorcade you won't be participating in." *Id.* When Special Agent Hicks asked Defendant Ferreyra why he was being detained, he was told to "shut up." *Id.*

Shortly after Defendant Ferreyra first seized Special Agent Hicks, Defendant Officer Phillips came to the location where Hicks was being held and similarly harassed, berated, and detained Special Agent Hicks. *Id.* at ¶ 36. Like Defendant Ferreyra had, Defendant Phillips acknowledged his awareness that Special Agent Hicks was a federal law enforcement officer on duty, even complaining to Special Agent Hicks about the Secret Service conducting business in (what he believed was) USPP's jurisdiction. *Id.* at ¶ 37. Nonetheless, Defendant Phillips continued to hold Special Agent Hicks, repeatedly telling him that he was not free to leave, without any reason whatsoever to believe (or suspect) that Hicks had engaged in any criminal conduct. *Id.* at ¶¶ 37-38.

After about thirty minutes passed, Secretary Johnson's Secret Service motorcade began to approach. *Id.* at ¶ 40. The motorcade reduced speed to allow Special Agent Hicks to join it, in full view of Defendants. *Id.* Defendants, however, who remained armed and in close proximity to Special Agent Hicks, refused to release him. *Id.* Indeed, as the motorcade approached, a USPP officer mockingly waved his hand goodbye to it, while Special Agent Hicks remained held

on the side of the road. *Id.* at ¶ 41. Ultimately, the motorcade left the area without Special Agent Hicks leading it. *Id.*

At some point after the motorcade left, a USPP Sergeant (Sgt. T.F. Wallace) arrived on the scene. *Id.* at ¶ 43. Remarkably, the Sergeant revealed that Defendants had told him that Special Agent Hicks was a federal law enforcement officer, and further acknowledged that Special Agent Hicks had done nothing criminal in nature. *Id.* Yet, he provided no explanation for the reason Defendants had detained Hicks for a prolonged period of time. *Id.* All told, Defendants detained Special Agent Hicks for at least one hour, without probable cause and with no reasonable suspicion to believe that he had done anything unlawful, before finally releasing him. *Id.* at ¶45

Affirming Defendants' improper motives, as Special Agent Hicks was driving away, Defendant Phillips inexplicably stopped him again. *Id.* at ¶ 46. (And he acknowledges that he is not immune from suit for his subsequent detention of Special Agent Hicks, *see* Defs.' Mot. to Dismiss ("Defs.' Mot.") (Doc. 37) at 2 n.1.). This second, successive detention was similarly effectuated without any reasonable suspicion that Special Agent Hicks had done anything wrong. Complaint at ¶ 46. In fact, Special Agent Hicks had been complying with all laws and did nothing that warranted being stopped by any police officer. *Id.* Again, Defendant Phillips retrieved Special Agent Hicks's identification and car registration (despite just having had possession of these documents) and continued to talk to him in a demeaning and degrading tone. *Id.* at ¶ 47. It was not until another USPP officer on the scene intervened that Defendant Phillips finally released Special Agent Hicks—but not before throwing his identification and registration at him. *Id.* at ¶ 48.

## <u>LEGAL STANDARD</u>

In considering a Rule 12(b)(6) motion to dismiss, a court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Russell v. Russel Motor Cars Inc.*, 28 F. Supp. 3d 414, 418 (D. Md. 2014) (Grimm, J.) (quoting *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997)). The Court "must further disregard the contrary allegations of the opposing party." *Daniels v. New Germany Fund, Inc.*, No. CIV.A. MJG-05-1890, 2006 WL 4523622, at *2 (D. Md. Mar. 29, 2006) (citing *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir. 1969)).

Ultimately, the court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations and citations omitted). And where, as here, the motion to dismiss involves "a civil rights complaint, [the court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*" *Carter v. Baltimore Cty., Maryland*, 39 F. App'x 930, 934 (4th Cir. 2002) (emphasis in original) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999)).

Additionally, "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker,* 462 F. App'x 348, 352 (4th Cir. 2012). If, in the court's discretion, matters "outside the pleading[s] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. Pro 12(d). The nonmoving party, however, must be "afforded a reasonable opportunity for discovery" before a motion to dismiss pursuant to Rule 12(b)(6) can be converted to a motion for summary judgment. *Gay v. Wall,* 761 F.2d 175, 178 (4th Cir. 1985) ("Because Gay was not afforded an opportunity for

reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion."); *see also Carter,* 39 F. App'x at 933 (finding reversible error where the district court "convert[ed] the motion to dismiss to a summary judgment motion without giving Carter . . . a reasonable opportunity for discovery").

## ARGUMENT

### I. Defendants Are Not Entitled To Qualified Immunity Under the Facts Alleged in Hicks's Complaint

Defendants' conduct in continuing to detain Special Agent Hicks long after confirming his identity and lawful presence in the area in which he was initially stopped, and for no legitimate reason at all, is *not* protected by qualified immunity.

The doctrine of qualified immunity shields law enforcement officials from claims of constitutional violations only for conduct that is "*reasonable.*" *See, e.g.*, *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012) (emphasis added). Qualified immunity does not protect officers who are "plainly incompetent or knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 453 (4th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Even "well-meaning officers" who make honest, but "unreasonable legal mistakes" are not protected by the doctrine. *Henry v. Purnell*, 652 F.3d 524, 535 (4th Cir. 2011) ("Although officers are only human and even well-intentioned officers may make unreasonable mistakes on occasion, the doctrine of qualified immunity does not serve to protect them on those occasions.").

In determining whether a police officer is entitled to qualified immunity in any given case, the court conducts a two-part analysis. *See, e.g.*, *Doe*, 225 F.3d at 446. First, the court determines whether the facts alleged, "taken in the light most favorable to the party asserting the injury" (here, Special Agent Hicks), *Merchant*, 677 F.3d. at 661-62, establish that the officer's conduct violated a constitutional or statutory right. *See, e.g., id.; Doe,* 225 F.3d at 446. If the

facts as alleged by the plaintiff establish such a violation, the court then determines whether the constitutional or statutory right at issue was "clearly established" at the time of the alleged violation. *See, e.g., Merchant*, 677 F.3d at 662. A right is "clearly established" simply if it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* If the court ultimately determines that a plaintiff has alleged a violation of a clearly established constitutional and/or statutory right, qualified immunity does not apply and the officer "is to be held personally responsible for his unlawful conduct." *Doe,* 225 F.3d at 446.

Analysis of both prongs makes clear that Defendants are not entitled to qualified immunity in this case. Specifically, the allegations contained in Hicks's Complaint, which must be accepted as true, more than sufficiently establish that: a) Defendants violated Hicks's Fourth Amendment right to be free from an unreasonable seizure by continuing to detain him without any legitimate justification and b) that his right to be free from such an unreasonable seizure was "clearly established" in light of the particular circumstances of this case, as any reasonable officer would (or should) have known that he had no basis to persist in detaining Hicks after confirming, and acknowledging, that Hicks was an on-duty Secret Service agent.

A.    Special Agent Hicks's Complaint Adequately Alleges a Violation of His Fourth Amendment Rights

Special Agent Hicks's Complaint adequately alleges that Defendants continued to detain him without any legitimate, lawful justification, in violation of the Fourth Amendment's prohibition against unreasonable seizures.[1] Defendants' various arguments to the contrary do not withstand scrutiny.

---

[1] Defendants acknowledge that Special Agent Hicks was "seized" for purposes of the Fourth Amendment. *See, e.g.,* Defs.' Mot. at 9 (acknowledging that Defendant Ferreyra detained Special Agent Hicks). Nor could they contend otherwise. Special Agent Hicks's Complaint alleges facts establishing that Defendants seized him, including that he was held on the side of the road for at least one hour by armed officers, *see, e.g.,* Complaint at ¶¶ 30,32-33, 36-37, 45, as well as that he repeatedly asked to be released and was told he was not free to leave, *see, e.g., id.* at 34, 38.

The Fourth Amendment generally prohibits law enforcement officers from seizing an individual without probable cause to do so. *See, e.g., Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) (recognizing that "[u]nquestionably, [t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable") (internal citation and quotation marks omitted). An officer has probable cause, for purposes of the Fourth Amendment, only if the "facts and circumstances within the officer's knowledge…are sufficient to warrant a *prudent* person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (emphasis added) (internal quotations and citations omitted). A seizure is unreasonable under the Fourth Amendment where any such "probable cause could easily have been dissipated by minimal inquiry at the outset." *McDaniel v. Arnold*, 898 F.Supp.2d. 809, 842 (D. Md. 2012) (quoting *United States v. Struckman*, 603 F.3d 731, 746 (9th Cir. 2010)).

Further, while the Supreme Court has recognized that, in some circumstances, officers can detain a person on less than probable cause if they have a reasonable, articulable suspicion that the person has engaged in some criminal activity, *see e.g., Terry v. Ohio*, 392 U.S. 1, 30 (1968), such a seizure must be brief and made only for the purpose of investigating the officer's suspicions.[2] *See, e.g., Turmon v. Jordan*, 405 F.3d 202, 205 (4th Cir. 2005) (recognizing that an officer's "reasonable suspicion supported by articulable facts that criminal activity may [have] be[en] afoot…justif[ies] a brief detention for investigative purposes." (quoting *United States v.*

---

See, e.g., Vathekan v. Prince George's County*, 154 F.3d 173, (4th Cir. 1998) ("A Fourth Amendment seizure occurs whenever there is governmental termination of freedom of movement through means intentionally applied.") (internal citations and quotation marks omitted).
[2] Defendants claim that they had probable cause to detain Hicks, *see, e.g.,* Defs.' Mot. at 9, but also indicate that they held him in order to conduct an investigation to verify their purported "suspicion[s]," *see, e.g., id.* at 10 n. 10., 13, suggesting that they were detaining him for purposes of an investigative detention/*Terry* stop. Accordingly, Special Agent Hicks addresses both standards in this Opposition (as neither was met under the facts of this case).

*Sokolow*, 490 U.S. 1, 7 (1989)) (internal quotations and citations omitted) (alterations in original). In other words, the period of detention "must last no longer than necessary to verify or dispel the officer's suspicion….". *United States v. Leshuk*, 65 F.3d 1105, 1109 (4th Cir. 1995) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Once any such suspicions that an officer may have had upon making contact with an individual are extinguished, the Constitution demands that the officer release the individual. *See, e.g., Berkermer v. McCarty*, 468 U.S. 420, 439-40 (1984) (recognizing that during the course of an investigatory detention "unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.").

     *a.  Special Agent Hicks's Factual Allegations Demonstrate That Defendants Seized Him Without Lawful Justification*

Here, Special Agent Hicks has alleged facts establishing that Defendants continued to detain him long after confirming and acknowledging his identity and lawful presence in the area, without any probable cause to reasonably believe that he had committed any crime, and well after any suspicions Defendant Ferreyra may claim to have had upon initially making contact with him (should have) dissipated. Such conduct clearly violates the Fourth Amendment's prohibition against unreasonable seizures. *See, e.g., Merchant*, 677 F.3d at 662; *Turmon* 405 F.3d at 205; *Bailey v. Kennedy* 349 F.3d 731 at 739 (4th Cir. 2003). Allegations in Hicks's Complaint that support his claim include that Defendants continued to detain Hicks (for at least one hour), *see* Complaint at ¶ 45, even though 1) Defendants knew that he was a Secret Service Agent (on-duty), *see*, *e.g.*, *id.* at ¶¶ 32, 37, 42, and 2) no additional circumstances could have possibly provided any probable cause or suspicion to believe that he was engaged in any criminal conduct.

First, Defendants continued to detain Special Agent Hicks despite knowing that he was a Secret Service Agent on-duty, and thus not doing anything unlawful by being parked on the shoulder of the highway. Multiple allegations contained in the Complaint affirm that Defendants undoubtedly knew—because they expressly acknowledged—that Special Agent Hicks was a Secret Service Agent well before Defendants finally released him (from the first stop).[3] For example, according to the Complaint, Defendant Ferreyra expressly "*acknowledged*" that Special Agent Hicks was a federal law enforcement official after receiving and inspecting Hicks's credentials. *Id.* at ¶ 32 (emphasis added). Defendant Phillips "similarly *acknowledged* that Special Agent Hicks was a federal law enforcement officer *on duty*," and even complained to Special Agent Hicks about the Secret Service conducting business in the USPP's jurisdiction. *Id.* at ¶ 37 (emphasis added). Additionally, Sgt. Wallace (a USPP officer who later arrived on the scene) revealed that Defendants had admitted to him—*prior* to Special Agent Hicks's release— that Hicks was a "federal law enforcement officer," and that Special Agent Hicks "had not done anything criminal in nature," *id.* at ¶ 43, but despite these admissions, Defendants detained Hicks nonetheless.

Second, according to the Complaint, no other circumstances were present that could have possibly provided Defendants with reason to detain Special Agent Hicks. For example, according to Special Agent Hicks's Complaint, nothing about Hicks's conduct or demeanor

---

[3] In addition to Defendants' respective acknowledgements that Special Agent Hicks was a Secret Service Agent, the Complaint alleges a number of objective facts that, taken as true, would have made clear to a reasonable officer that Hicks was a Secret Service Agent. For example, a) Hicks immediately provided to Defendant Ferreyra his valid Secret Service badge and photo-identification that identified him as a Secret Service Agent, *id.* at ¶¶ 31-32; b) Hicks produced the registration for his car, which, according to Hicks's Complaint, was registered to the Secret Service and further identified him as a Secret Service Agent, *id.* at ¶ 31; c) Defendants were aware of Special Agent Hicks's contemporaneous conversations with his own supervisor while detained, which the Complaint alleges further confirmed that Hicks was a Secret Service Agent who had been waiting to participate in a motorcade, *id.* at ¶¶ 35-36, 42; and d) the motorcade that Hicks had been discussing with Defendants approached and slowed to allow Hicks to join it, in full view of Defendants, yet U.S. Park Police waved goodbye to it and held him for at least thirty additional minutes, *id.* at ¶¶ at 40-42, 44.

provided justification for Defendants to detain him; he was calm and complied with Defendants' directives.  *Id.* at ¶ 38.  He did not have any unlawful contraband or anything else in his possession that would have aroused the suspicions of a reasonable police officer, *see id.*; in fact, he was armed only with the service weapon that he is expressly authorized to carry pursuant to federal statute, *id.* at ¶33.  *See* 18 U.S.C.A. § 3056(c)(1)(B)  (providing that "officers and agents of the Secret Service are authorized to…carry firearms.").  Indeed, according to Special Agent Hicks's Complaint, he did not engage in any activity during the course of his interaction with Defendants that could remotely be described as criminal conduct warranting further detention.  *Id.* at ¶ 42.

Thus, according to Hicks's well-pled allegations, nothing that Special Agent Hicks did, or that Defendants observed, after Defendant Ferreyra first made contact with him and confirmed that he was a federal agent would have caused a reasonable officer to conclude (or even suspect) that Special Agent Hicks had committed a crime.  Where, as here, the circumstances as alleged by a plaintiff would not have led a reasonable officer to believe or conclude that the plaintiff had committed any crime, the Fourth Circuit has repeatedly found that the plaintiff has stated a viable Fourth Amendment claim—and for far less innocent conduct than Special Agent Hicks alleges. *See, e.g., Merchant*, 677 F.3d at 662 (finding viable Fourth Amendment claim where "no prudent person would have believed that Dr. Merchant violated the Impersonation Statute," under the specific circumstances of the case, even where officer claimed to have received a prior report regarding plaintiff's conduct, the officer saw plaintiff with a badge that the officer claimed he thought might have been a (fake) police badge, and the plaintiff referred to her car as a "police car" while she was being questioned); *Turmon*, 405 F.3d at 205 (finding that officer did not have a reasonable belief that plaintiff might have committed arson in his hotel room warranting

seizure, even after seeing what appeared to be smoke coming from the room and observing plaintiff's purportedly evasive conduct because there were no flames or smell of smoke when officer approached the room, the fire alarm had not sounded, and the room was not on fire when the officer approached it); *Bailey*, 349 F.3d at 739 (finding that officers had no basis to detain plaintiff for an involuntary medical evaluation, even where officers received a prior complaint that plaintiff was suicidal, because officers did not observe any conduct during the course of their interaction with plaintiff suggesting that he was distraught or suicidal).

### b. *Defendants' Arguments to the Contrary Should be Rejected*

Relying upon unsupported allegations that are a) not contained in Special Agent Hicks's Complaint, b) conflict with Special Agent Hicks's allegations, or c) both, Defendants contend that the (largely disputed) circumstances as they purportedly appeared to Defendant Ferreyra when he first made contact with Special Agent Hicks justified Defendants' decision to seize Special Agent Hicks for the purpose of conducting an "investigation." *See, e.g.*, Defs.' Mot. at 9-10.[4] But Special Agent Hicks's claim is that Defendants violated his Fourth Amendment rights by detaining him well after any reasonable suspicions Defendant Ferreyra may claim to have had upon initially encountering him dissipated, for much longer than what was reasonably required to investigate any such suspicions, and without probable cause to believe that he had committed any criminal offense. *See, e.g., Merchant*, 677 F.3d at 662; *Turmon* 405 F.3d at 205; *Bailey*, 349 F.3d at 739. Defendants' assorted claims that 1) they did not know (and were not required to assume) that Hicks was a Secret Service Agent, *see, e.g.,* Defs.' Mot. at 4-5,10-11; 2) somehow had cause to detain Special Agent Hicks because he was in possession of his service

---

[4] Defendants, for example, allege that Special Agent Hicks was purportedly "asleep" when Defendant Ferreyra first approached him. *See, e.g,* Defs.' Mot. at 10 n. 9, Exhibit A to Defs' Mot. at ¶7. Disputed. In fact, Special Agent Hicks's Complaint alleges that he had just gotten off of the telephone with his supervisor and was awaiting the oncoming motorcade when Defendant Ferreyra approached his car. *See* Complaint at ¶¶ 28-29.

firearm, *see id.* 11; as well as that 3) they detained Special Agent Hicks for the purpose of initiating and conducting a purported "investigation," *see id.* at 10-11, distort both the facts as alleged by Special Agent Hicks and the law, and thus should be rejected by the Court.

First, Defendants' repeated and unsupported assertions that they thought it prudent to detain Special Agent Hicks because they were somehow unclear about his identity, *see, e.g., id.* at 10-11, or that Hicks only offered to Defendants his "word" that he was a Secret Service Agent, *see, e.g., id.* at 4, conflict with Special Agent Hicks's allegations, and thus cannot be considered by the Court. *See, e.g., Daniels*, No. CIV.A. MJG-05-1890, 2006 WL 4523622, at *2 (citing *A.S. Abell Co.,* 412 F.2d at 715) (recognizing that in ruling upon a 12(b)(6) Motion, the Court must "disregard the contrary allegations of the opposing party."). As detailed above, Special Agent Hicks's Complaint specifically alleges that Defendants were well aware that he was a law enforcement officer and, in fact, expressly *acknowledged* that he was a Secret Service Agent multiple times before releasing him. *See* Complaint at ¶¶ 33, 37, 43. Further, far from Defendants operating only on Hicks's "word" that he was a Secret Service Agent, the Complaint alleges a series of objective facts that confirmed Hicks's identity as a law enforcement officer over and over again. These facts include that a) Special Agent Hicks had valid credentials and photo-identification to back up his "word" that he was a Secret Service Agent, Complaint at ¶¶ 31-32; b) his car registration identified him as being with the Secret Service, *id.* at ¶ 31; c) Defendants were aware of his real-time communications with his supervisors (which the Complaint alleges further confirmed his identity), *id.* at ¶¶ 35-36, 42; and d) Defendants, themselves, received confirmation regarding the motorcade Hicks had been discussing when it approached at least thirty minutes before Hicks was released. *Id.* at ¶¶ at 40-42, 44. In short, to the extent that (as Defendants' suggest, *see* Defs.' Mot. at 4-5) the Court's resolution of this

Motion turns at all on whether Defendants should have known or, in fact, knew that Special Agent Hicks was a Secret Service Agent as they detained him, Special Agent Hicks's Complaint makes clear that they should have and, in fact, did. Defendants' claims to the contrary provide no support for their Motion.

Second, Defendants make the remarkable claim that even if it was (or became) clear that Special Agent Hicks was working as a Secret Service Agent, they nonetheless had probable cause to continue to detain him because a) they thought it might have been illegal for him to possess a firearm under Maryland State law and, relatedly b) they (purportedly) did not know whether Secret Service Agents could carry firearms. *See, e.g.,* Defs.' Mot. at 8-11. But, as Circuit law has repeatedly instructed, the relevant inquiry is not whether Defendants, subjectively, believed that Hicks (as a Secret Service Agent) was committing a crime by possessing his service weapon, but what a reasonable officer in Defendants' position would have concluded under the circumstances. *See, e.g., Merchant*, 677 F.3d at 662 (recognizing that the question whether an arrest was "reasonable or supported by probable cause is evaluated under an objective standard, based on what a prudent officer would have believed under the circumstances."); *Graham v. Gagnon*, 831 F.3d 176, 185 (4th Cir. 2016) (same). No reasonably prudent police officer would have believed that he had cause to detain a *federal agent* (and particularly a Secret Service Agent) because that agent was carrying a firearm while on duty. Not only does the Maryland weapons-possession statute upon which Defendants rely, *see, e.g.,* Defs'. Mot. at 8-9, specifically *exempts* law enforcement officers, and thus permits them to carry firearms (while on-duty at a minimum), *see* Md. Code Ann. Crim. Law §4-203(b)(1)(i), Secret Service Agents are *expressly* authorized by federal statute to carry firearms. *See* 18 U.S.C.A. § 3056(c)(1)(B). Defendants' claimed, subjective misunderstanding of the law does not shield

them from liability. *See, e.g., Pritchett* 973 F.2d, 314 (recognizing that "[p]robable cause…could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both.").

Finally, Defendants' self-serving and disputed assertions that they detained Special Agent Hicks in order to initiate and conduct an investigation fare no better. *See, e.g.,* Defs.' Mot. at 10-11. Even putting aside the allegations in Hicks's Complaint making clear that his identity as a Secret Service Agent was not legitimately in question, *see, e.g.,* Complaint at ¶¶ 33, 37, 42-43, Hicks's Complaint alleges both that Defendants a) "had ample opportunity to verify" [his] status as a federal law enforcement agent" prior to their eventual decision to release him, Complaint at ¶ 42, and b) further alleges facts establishing that Defendants did not "diligently pursue a means of investigation that was likely to confirm or dispel their suspicions quickly," as required by Circuit (and Supreme Court) precedent. *United States v. Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011), *as amended* (Aug. 2, 2011) (quoting *United States v. Sharpe,* 470 U.S. 675, 686 (1985)).

The allegations contained in Hicks's Complaint, in fact, demonstrate that Defendants did *not* conduct any investigation at all. For example, while Defendants disingenuously suggest that U.S. Park Police Officers made contact with Hicks's supervisor in an effort to conduct an "investigation," *see, e.g.,* Defs.' Mot. at 10, the Complaint makes clear that it was *Hicks* who initiated contact with his supervisor to inform him that he was being precluded from participating in the motorcade. Complaint at ¶ 35. Defendants expressed no interest in talking to, and made no effort to talk to, Hicks's supervisor on the scene—instead both Defendants, separately, told Special Agent Hicks that they "did not care" who he contacted or if he had a supervisor on the line. *See* Complaint at ¶ 35-36. And when the Secret Service motorcade approached and slowed down to permit Special Agent Hicks to join it, rather than make any effort to confirm Special

Agent Hicks's identity or assignment with the federal law enforcement officers who arrived on the scene, U.S. Park Police "mockingly" waved it off and Defendants continued to detain him. *Id.* at ¶¶ 40-41. These allegations make clear that rather than conduct any sort of diligent investigation, Defendants (who had already acknowledged they were aware Hicks was a Secret Service Agent) impermissibly turned a "blind eye" to additional information that would have unquestionably resolved any lingering doubts about the lawfulness of his conduct, in violation of the Fourth Amendment. *McDaniel*, 898 F. Supp. 2d at 842) (recognizing that under the Fourth Amendment officers cannot "simply turn a blind eye towards potentially exculpatory evidence") (quoting *Logsdon v. Hains,* 492 F.3d 334, 341 (6th Cir. 2007)).

Further, while Defendants allege, without any support, that they called their supervisor (Sgt. Wallace) for the purpose of conducting an investigation, *see* Defs.' Mot. at 10, and that their supervisor, in fact, conducted an investigation, *see id.* at 6, no such information is contained in, or can be inferred from, Special Agent Hicks's Complaint. To the contrary, Hicks's Complaint makes clear that Defendants called their supervisor, not to conduct any investigation, but only because Hicks insisted on contacting his own supervisor. *See* Complaint at ¶¶ 35, 43. In fact, according to Hicks's Complaint, Defendants' supervisor did not gather any additional information about Special Agent Hicks on the scene; instead he admitted to Hicks's supervisor that Defendants knew that Hicks was a "federal law enforcement officer," "acknowledged that Special Agent Hicks had not done anything criminal in nature," and "provided no explanation for the reason Defendants had detained Special Agent Hicks for a prolonged period of time." *Id.* at ¶

43.[5]  At a minimum, there is a factual dispute regarding whether any investigation even occurred, which necessitates the denial of Defendants' Motion on this ground.

In sum, Special Agent Hicks's Complaint sufficiently alleges that there was no constitutionally legitimate reason for Defendants to persist in detaining him. Accordingly, Plaintiff Hicks has sufficiently pled a Fourth Amendment violation, and the first prong of the qualified immunity test should be resolved in his favor.

B.    Defendants' Violation of Special Agent Hicks's Constitutional Rights Is Clearly Established

Special Agent Hicks's constitutional right to be free from an unreasonable seizure under the specific facts and circumstances of this case—where those facts and circumstances (as alleged by Hicks) establish that he was a) working as a Secret Service Agent and b) that Defendants had no reasonable basis to believe or suspect that he had committed a crime—is clearly established.  *See, e.g.*, *Graham*, 831 F.3d at (recognizing that "the right at issue" for purposes of the qualified immunity analysis "is not the general right to be free from arrest without probable cause, but rather the right to be free from arrest *under the particular circumstances of the case*") (emphasis added); *Merchant*, 677 F. 3d at 666 (in case involving arrest for impersonating a police officer, defining right at issue as right to be free from arrests for impersonating a police officer without probable cause); *Turmon*, 405 F.3d at 206 (in case involving officer's seizure of a person to conduct an investigative detention, finding that it was clearly established that a police officer must have reasonable, articulable suspicion in order to justify an investigative detention).

---

[5] If, in fact, Defendants' supervisor was quickly able to confirm information necessary to release Hicks during his conversation with Hicks's supervisor it makes Defendants prior refusal to speak to Hicks's supervisor—who was on the line as Defendants' detained him, *see, e.g.,* Complaint at ¶¶ 35-36, all the more troubling.

Any reasonable police officer would have been well aware that he could not continue to detain Special Agent Hicks after confirming and acknowledging that Special Agent Hicks was working as a Secret Service Agent, *see* Complaint at ¶¶ 33, 37, 43, and in the absence of any other conduct suggesting that he may have been engaged in any criminal activity as alleged in Hicks's Complaint. *See, e.g., id.* at ¶ 42*; see also, e.g., Merchant*, 677 F.3d at 665 (recognizing that a right is "clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Ample Circuit precedent places law enforcement officials within this jurisdiction on sufficient notice that they cannot arrest or persist in detaining an individual where the facts as known or revealed to the officer make clear that no law has been broken. *See, e.g., Graham*, 831 F.3d at 182; *Merchant*, 677 F.3d at 662; *Turmon*, 405 F.3d at 205; *Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir. 1988). Here, after confirming Special Agent Hicks's identity and lawful business in the area, Defendants inexplicably continued to detain him for at least one hour, Complaint at ¶ 45; berated and mocked him, *see, e.g., id.* at ¶38; and, affirming the impropriety of Defendants' conduct, one Defendant (Phillips) even stopped him again—despite the fact that he had not done anything to warrant subsequent detention. *See, e.g., id.* at 46. Defendants knew or should have known that their actions in detaining Special Agent Hicks without justification were not constitutionally permissible, and thus their conduct is not protected.

Defendants' only argument to the contrary is that Hicks's constitutional right to be free from an unreasonable seizure under the particular circumstances of this case was not clearly established (at least to them[6]) because they were somehow unclear as to whether a Secret Service

---

[6] Defendants' repeated claims that the circumstances under which probable cause might have existed to detain Special Agent Hicks were not clearly established to them, as evidenced by the (challenged) actions they took in this case, *see, e.g.,* Defs.' Mot. at 5, 6, 12, is wholly irrelevant. Both prongs of the qualified immunity analysis are based upon an objective standard. *See, e.g. Bailey*, 349 F.3d at 741 (recognizing that the qualified immunity

18

Agent could carry a firearm under state law (and were thus detaining him on some purported suspicion that he was unlawfully in possession of his service firearm). *See* Defs' Mot. (Doc. 37) at 11-12. Defendants' warped logic is not credible; nor does it withstand scrutiny. Both federal and state law clearly and *expressly* authorize Secret Service Agents to carry firearms under the facts as aleged by Hicks and understood by these Defendants. Thus, Defendants had no reason to suspect that Hicks had violated any criminal laws.

First, as noted above, *see supra* at 11, Secret Service agents are *expressly* authorized to carry firearms by a federal statute that delineates the various powers conferred upon them. *See* 18 U.S.C.A. § 3056(c)(1)(B) (providing that "officers and agents of the Secret Service are authorized to…carry firearms."). Accordingly, no *reasonable* officer confronting a Secret Service Agent (and particularly one awaiting an oncoming motorcade), would believe he had probable cause to detain that Agent for merely possessing the firearm that he is expressly authorized to carry pursuant to federal statute.[7] *See, e.g., McDaniel*, 898 F.Supp.2d at 831 (recognizing that officer's disregard of a federal statute, which in the case before the court permitted individuals to lawfully transport weapons under certain circumstances, "may render a search or seizure unreasonable"). Defendants' claimed ignorance of the law does not excuse their conduct. *See, e.g., Pritchett*, 973 F.2d at 314 (4th Cir. 1992); *see also McDaniel*, 898 F.Supp.2d at 831 ("The protection of qualified immunity applies regardless of whether the

---

"inquiry is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what an objectively reasonable officer would have understood in those circumstances.")

[7] To be clear, Special Agent Hicks is not suggesting (and has not alleged) that 18 U.S.C.A. § 3056(c)(1)(B) confers upon him a right to be enforced in this *Bivens* action (through this case he alleges a violation of his rights under the Fourth Amendment). Rather, the existence of a federal statute expressly authorizing his conduct is relevant to the Court's consideration whether Defendants are entitled to qualified immunity (and confirms that they are not). *See, e.g., id.*

government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.") (internal quotations and citations omitted) .

Second, even the Maryland State criminal statute (§4-203) that Defendants claim they suspected Hicks of violating, *see* Defs' Mot. at 10-11, unambiguously authorized Hicks to carry a firearm under the facts Hicks has alleged in his Complaint. The statute specifically *exempts* law enforcement officers (like Hicks) from the statute's criminal penalties and allows such individuals to carry or transport handguns under state law. *See* §4-203(b)(1)(i). Defendants attempt to read some sort of ambiguity in the statute's plain language by making much of the fact that the exemption applies to those law enforcement officials who are authorized "at the time and under the circumstances" to carry a firearm, but it is clearly established that, at minimum, the exemption applies to officers on duty. *See Blue v. Prince George's Cty.* 434 Md. 681, 693, 76 A.3d 1129 (2013) (Maryland Court of Appeals recounting legislative history of §4-203 and acknowledging that the statute's exemption applies to "on-duty law enforcement").[8] Simply put, no reasonable officer would believe it lawful to detain a Secret Service Agent (on-duty) for purportedly violating a statute where, as here, it is apparent that the statute expressly authorizes the conduct at issue. *See, e.g., Sevigny* , 846 F.2d at 957 (recognizing that "in assessing the objective reasonableness of any legal misapprehension of the contours of the criminal offense thought committed, account must be taken of the degree to which the law's application was apparent."); *Graham*, 831 F.3d at 182 ("The…officers lose the shield of qualified immunity if it would have been clear to reasonable officers in their position that they lacked probable cause to arrest Graham for violating Virginia's obstruction of justice statute…. In other words, the

---

[8] Further, a Secret Service Agent authorized by federal statute to carry a firearm clearly falls within the exemption's clear language. In any event, under no circumstances would or could a state statute criminalize the conduct of a Secret Service Agent when such conduct is expressly authorized by federal law.

officers' immunity turns on the "objective legal reasonableness" of their conclusion that there was probable cause to arrest Graham); *see also Lovelace v. Lee*, 472 F.3d 174, 197 (4th Cir. 2006) (confirming that "laws…do not need judicial approval to take effect and be clearly established.")[9]  As Hicks has alleged facts establishing that Defendants both confirmed and acknowledged that he was a Secret Service Agent (on-duty) well before releasing him, *see* Complaint at ¶¶ 33,37, they were on clear notice—pursuant to both federal and state statutes— that they had no grounds to detain him for merely possessing his service firearm.  Their decision to do so anyway is actionable.

Accordingly, Hicks has sufficiently alleged that Defendants violated his clearly established, constitutional rights under the Fourth Amendment.  Defendants Motion should thus be denied.

## II.     Defendants' Motion For Summary Judgment in the Alternative Should Similarly Be Denied

For the reasons stated above, Special Agent Hicks's Complaint sufficiently alleges a violation of his clearly established rights under the Fourth Amendment, and thus Defendants' Motion to Dismiss should be denied.  In the alternative, Defendants ask the Court to a) consider materials extrinsic to Special Agent Hicks's Complaint, b) credit their assertions about what happened (over Special Agent Hicks's), and c) grant summary judgment in their favor—without providing Plaintiff any opportunity to develop a factual record in this case for the Court to review.  Defendants' Motion should be denied because 1) Defendants' representations make clear that there are factual disputes between the parties that are inappropriate for resolution by

---

[9] Further, "[t]he absence of a prior case directly on all fours…speaks not to the unsettledness of the law, but to the brashness of the conduct."  *Id.* (quoting *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir. 1995) (en banc); *see also Bellotte v. Edwards*, 629 F. 3d 415, 424 (4th Cir. 2011) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997) (recognizing that "[t]he easiest cases don't even arise.").

summary judgment and 2) Special Agent Hicks has not yet had the opportunity to conduct reasonable discovery regarding the detention at issue. Accordingly, the Court should not consider matters outside Hicks's Complaint, deny Defendants' Motion for Summary Judgment, or, at a minimum, afford Special Agent Hicks the opportunity to conduct discovery before ruling upon Defendants' Motion.[10]

First, Defendants' Motion makes clear that there are factual disputes between the parties that make resolution by summary judgment (particularly at this early stage of the proceedings) inappropriate. "When resolution of a case depends on determining what actually happened, the issue is inappropriate for resolution by summary judgment" because "[d]isputed facts are treated no differently in…the qualified immunity analysis than in any other context." *See, e.g., Vathekan*, 154 F.3d at 179-80 (internal quotations and citations omitted). Here, there are concrete disputes between the parties about what happened during the course of Special Agent Hicks's detention that must be resolved by the fact-finder. For example:

- While Special Agent Hicks alleges that he had just gotten off of the telephone with his supervisor and was waiting for the oncoming motorcade when Defendant Ferreyra approached, *see* Complaint at ¶¶ 28-30; Defendants claim that Special Agent Hicks was "asleep," *see, e.g,* Defs.' Mot. at 10 n. 9, Exhibit A to Defs' Mot. at ¶ 7, as well as that their claim that he was allegedly sleeping informs and/or justifies the actions that they took in this case, *see, e.g., id.* at 5 n.6;

- While Special Agent Hicks's Complaint clearly alleges that his car was registered to the Secret Service, and that he produced his registration to Defendant Ferreyra (which, like

---

[10] Should the Court defer resolution of this Motion to allow the parties to conduct discovery, Plaintiff respectfully reserves the right, consistent with Rule 12(d), to submit a response to Defendants' Motion that incorporates reference to materials obtained through discovery.

his other credentials, identified him as working with the Secret Service), *see* Complaint at ¶ 31; Defendants quibble with (and apparently intend to dispute), Plaintiff's (accurate) characterization that he was in a Secret Service-issued vehicle at the time of these events, *see* Defs.' Mot. at 3 n.2;

- While Special Agent Hicks's Complaint makes clear that Defendants did not conduct any investigation to resolve any purported confusion they now claim to have had about his identity, *see, e.g.,* Complaint at ¶ 35-36, 40-41, 43; Defendants repeatedly assert that their supervisor was called to the scene to conduct an "investigation," *see, e.g.,* Defs' Mot. at 4, 10-11. Whether Defendants, in fact, conducted any sort of diligent investigation is both disputed and relevant to the Court's determination whether their conduct was constitutionally permissible, *see supra* at 15-17); and

- While Special Agent Hicks alleges that Defendants "inspected" his credentials to their satisfaction and "acknowledged" their awareness that he was a Secret Service Agent, Complaint at ¶¶ 31-33,37,43; Defendants suggest that he only "flash[ed]" his "supposed" credentials, Defs' Mot. at 13, and apparently intend to take the position that they did not know (and should not have known) that he was a federal agent—which Hicks also disputes, *see* Complaint at ¶¶ 33, 37, 43.

These factual disputes, which are relevant to the Court's qualified immunity analysis, preclude Defendants' Motion from being granted.

Second, at minimum, the Court should decline to resolve Defendants' Motion until Plaintiff has been afforded the opportunity to conduct reasonable discovery regarding Defendants' claims. The Fourth Circuit has repeatedly found reversible error where a motion for summary judgment is considered prior to the non-moving party having an appropriate

opportunity to conduct discovery in the case. *See, e.g.*, *Gay,* 761 F.2d at 178; *Carter,* 39 F. App'x at 933. Here, discovery with respect to the conduct at issue in this Motion has been stayed pending resolution of Defendants' Motion, and thus Plaintiff has had no opportunity to take discovery in this case.

Defendants' Motion makes clear that discovery is necessary. The *overwhelming* majority of Defendants' claims rest upon (largely unsupported) assertions about what the evidence will purportedly show or refers to materials that Plaintiff has not yet received and can only obtain through discovery. For example:

- Defendants submit an affidavit from Defendant Ferreyra in which he testifies to his version of events to support his contention that he is somehow immune from suit, *see* Exhibit A to Defs' Mot; but, as discovery is stayed, Special Agent Hicks has had no opportunity to depose him or to take discovery to test the credibility of his assertions;

- Defendants assert, without support, that "discovery" in this matter will confirm that that the U.S. Park Police subsequently offered guidance that they contend is relevant to this case (and whether the claimed violation was clearly established prior to such guidance), *see* Defs' Mot. at 6 n.8; but Plaintiff has not yet been provided with any such guidance and does not know the content of it (or whether it is relevant to this case at all );

- Defendants contend that there are radio communications, notes from internal investigations, and other documents that purportedly support their claims, *see, e.g.,* Defs.' Mot. at 6 n.7, 10 n. 10; but that information has not been provided to Special Agent Hicks;

- Defendants' assert, without providing evidentiary support, that they supposedly did not receive prior notice of Special Agent Hicks's motorcade, as well as information regarding the notice that they usually receive, *see id.* at 5 n. 6, in support of their claim that their purported suspicions of Hicks were reasonable, but Special Agent Hicks has not received, and thus cannot confirm, any information about what Defendants did (or should have) received about the motorcade prior to their interactions with Special Agent Hicks;

- Defendants claim that Sgt. Wallace was called to the scene to investigate and supposedly provided instructions to Defendants regarding how to proceed, *see, e.g., id.* at 5; but Plaintiff can only obtain through discovery testimony, notes, or other documents from Sgt. Wallace or the USPP that Plaintiff expects will contradict Defendants' contention; and

- Defendants' claim that (despite a federal statute expressly authorizing Secret Service Agents to carry firearms) they were allegedly unfamiliar with Secret Service "rights and protocols, including whether Secret Service Agents could carry firearms," *id.* at 6, 11, but Special Agent Hicks has not had the opportunity to take discovery on this claim, which he suspects will be shown to be false.

Accordingly, while the Court can deny Defendants' Motion based upon the existence of disputed facts alone, *see Vathekan*, 154 F.3d at 179-80, at minimum, and pursuant to Fourth Circuit precedent, the Court should permit Special Agent Hicks to take discovery before resolving Defendants' Motion.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion should be denied, and this case should proceed to discovery.

January 17, 2017

Respectfully submitted,

_____/s/_____
Jia M. Cobb *Pro hac vice*
John P. Relman
Jennifer I. Klar *Pro hac vice*
RELMAN, DANE & COLFAX PLLC
1225 19th St., NW, Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
jrelman@relmanlaw.com
jklar@relmanlaw.com
jcobb@relmanlaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of January, 2017, a true and correct copy of

the foregoing Plaintiff's Opposition to Defendants' Motion to Dismiss was filed on the CM/ECF

system and served on the following counsel of record via the same:


Andrew C. White
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
Phone: (410) 385-2225
Fax: (410) 547-2432
awhite@mdattorney.com

Edward P. Parent
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
Phone: (410) 385-2225
Fax: (410) 547-2432
eparent@mdattorney.com


_____/s/_____
Jia M. Cobb