IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|   |   |
|---|---|
| NATHANIEL HICKS, | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-16-2521 |
| OFFICER GERALD L. FERREYRA, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nathaniel Hicks, a Secret Service agent, filed suit against Defendants Gerald L. Ferreyra and Brian Phillips, United States Park Police ("USPP") officers, for detaining him without probable cause twice, first for an hour along the highway after he showed them his credentials, and then a second time shortly after the first. Compl., ECF No. 1. Special Agent Hicks claims that Defendants violated his Fourth Amendment rights. *Id.* Asserting qualified immunity, Defendants move to dismiss or for summary judgment insofar as Plaintiff's claim is based on the first detention. ECF No. 37.[1] Because it is not clear from either the pleadings or the scant record currently before me that Defendants had probable cause for Plaintiff's continued detention during the first stop, I will deny the motion.

---

[1] The parties fully briefed the motion. ECF Nos. 40, 41. A hearing is not necessary. *See* Loc. R. 105.6. Plaintiff's claim that Officer Ferreyra stopped him a second time without probable cause, Compl. ¶ 14, is not subject to the pending Partial Motion to Dismiss or, in the Alternative, for Summary Judgment. Defs.' Mot. 2 n.1.

## Background[2]

Plaintiff alleges that on July 11, 2015, while working as a Secret Service agent, he was in a Secret Service-issued vehicle on the shoulder of Interstate 295 North, waiting to accompany the motorcade for Department of Homeland Security Secretary Jeh Johnson. Compl. ¶¶ 2–4. Officer Ferreyra, who was in uniform at the time, pulled over behind Plaintiff and approached his vehicle with his weapon drawn. *Id.* ¶ 5. According to Officer Ferreyra, Special Agent Hicks "was dressed in civilian clothes" and asleep in an unmarked vehicle that "was unwashed and had a damaged exterior," with "a loaded handgun lying on the passenger seat." Ferreyra Aff. ¶¶ 4–8. Special Agent Hicks claims that he "immediately and calmly identified himself as a United States Secret Service Agent" and then "provided his federal law enforcement credentials to Officer Ferreyra," who inspected them, and Hicks "explained that he was on-duty and waiting to lead an official motorcade of a Secret Service protectee." Compl. ¶¶ 6–7.

Special Agent Hicks contacted his supervisors by phone, Officer Phillips arrived to assist Officer Ferreyra, and Officer Phillips "told [Plaintiff] that he did not care" that Plaintiff's "supervisor was on the line." *Id.* ¶¶ 35–36. Both officers "acknowledg[ed] that Special Agent Hicks was, in fact, a federal law enforcement agent with the Secret Service." *Id.* ¶¶ 7–8. Yet, they continued to detain him for an hour, during which time the motorcade passed and they would not allow the agent to join it. *Id.* ¶¶ 7–12. Then, USPP Sergeant T. F. Wallace arrived

---

[2] On a motion for summary judgment, I consider the facts in the light most favorable to Plaintiff as the non-moving party, drawing all justifiable inferences in his favor. *White v. Pauly*, 137 S. Ct. 548, 550 (2017); *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009). Likewise, to determine the availability of qualified immunity, I take the facts alleged "in the light most favorable to the party asserting the injury," that is, Plaintiff. *Meyers v. Baltimore Cnty.*, 981 F. Supp. 2d 422, 429 (D. Md. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds in Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009)); *see Queen v. Prince George's Cnty.*, 188 F. Supp. 3d 535, 544 (D. Md. 2016) (same).

and "spoke with Special Agent Hicks's supervisor (who was still on the line), admitted that Offericers Ferreyra and/or Phillips had told him that Special Agent Hicks was a federal law enforcement officer." *Id.* ¶ 43. After that, Plaintiff was released. *Id.* ¶ 44. Plaintiff claims that, in detaining him for an hour after he provided his credentials, Defendants violated his Fourth Amendment rights. *Id.* ¶¶ 55–57. Defendants insist that they are entitled to qualified immunity, and move to dismiss or, alternative, for summary judgment on that basis.

## **Standard of Review**

Under Rule 12(b)(6), Plaintiff's Complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," such as qualified immunity. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins,* 637 F.3d 503, 506 (4th Cir.2011) (internal quotation marks omitted)). Thus, "[a] qualified immunity defense can be presented in a

3

Rule 12(b)(6) motion, but, . . . when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle'" and " 'is usually not successful.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id*.

Although Defendants move in the alternative for summary judgment, the only evidence they provide is a brief affidavit from Officer Ferreyra, asserting, as noted, that Special Agent Hicks "was dressed in civilian clothes" and asleep in an unmarked vehicle that "was unwashed and had a damaged exterior," with "a loaded handgun lying on the passenger seat." Ferreyra Aff. ¶¶ 4–8. And, although Plaintiff opposes the treatment of this motion as one for summary judgment, *see* Pl.'s Opp'n 26–28, he fails to provide an "affidavit or declaration that, for

specified reasons, [he] cannot present facts essential to justify its opposition," as Rule 56(d) requires. *See* Fed. R. Civ. P. 56(d). In any event, under either standard the outcome is the same: Defendants are not entitled to qualified immunity on either the facts alleged or the scant record before the Court.

## **Discussion**

Hicks asserts a *Bivens* claim to recover monetary damages from Defendants, who are federal law enforcement officers, for their alleged violations of his Fourth Amendment rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389, 397 (1971); *cf.* 42 U.S.C. § 1983 (providing cause of action against *state* officers or agents for constitutional rights violations). "But government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Thus, qualified immunity is available for officers or agents who "act in objectively reasonable reliance on existing law." *Queen v. Prince George's Cnty.*, 188 F. Supp. 3d 535, 541 (D. Md. 2016) (quoting *Rockwell v. Mayor & City Council of Baltimore*, No. RDB-13-3049, 2014 WL 949859, at *8 n.10 (D. Md. Mar. 11, 2014)).

Courts apply the same analysis to determine whether qualified immunity is available to a law enforcement officer or agent under either *Bivens* or § 1983. *See Wilson*, 526 U.S. at 609. The analysis "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555

U.S. 223, 231 (2009). "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

Pursuant to this doctrine, police officers are not liable under *Bivens* or § 1983 unless "(1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was 'clearly established' such that a reasonable person would have known his acts or omissions violated that right." *Streater v. Wilson*, 565 Fed. App'x 208, 210 (4th Cir. 2014) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal citations omitted)). The Court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in th[is] particular case at hand." *Pearson*, 555 U.S. at 236. The defendant carries the burden of proving qualified immunity. *McDonnell v. Hewitt–Angleberger*, No. WMN-11-3284, 2013 WL 4852308, at *3 (D. Md. Sept. 9, 2013) (quoting *Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013)).

Here, the parties agree that Defendants detained Special Agent Hicks for an hour after they initially stopped him.[3] "Unquestionably, [t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *McAfee v. Boczar*, 738 F.3d 81, 87 (4th Cir. 2013), *as amended* (Jan. 23, 2014) (quoting *Miller v. Prince George's Cnty.,* 475 F.3d 621, 627 (4th Cir. 2007)). Thus, the constitutional right not to be detained without probable cause is clearly

---

[3] Defendants argue for the first time in a footnote of their Reply that Special Agent Hicks was not detained prior to the motorcade's arrival because he was stopped by choice, waiting for the motorcade, *see* Defs.' Reply 6 n.3, but it is undisputed that they detained him when the motorcade arrived and after it passed.

established, *see id.*, and the issue is whether Defendants had probable cause to continue to detain Plaintiff. *See Streater*, 565 Fed. App'x at 210; *Brockington*, 637 F.3d at 506.

Probable cause to seize an individual "means 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (*Michigan v. De Fillippo,* 443 U.S. 31, 37 (1979)). Defendants argue that they had probable cause to detain Plaintiff because he was stopped along the highway in a dirty, unmarked car, in civilian clothes, with a loaded handgun. Def.'s Mot. 9–10 & n.9. Possession of a handgun in Maryland can give rise to probable cause, as Md. Code Ann., Crim. Law § 4-203(a)(1) provides that "a person may not: (i) wear, carry, or transport a handgun . . . on or about the person; [or] (ii) wear, carry, or knowingly transport a handgun . . . in a vehicle traveling on a . . . highway . . . ."

But what Plaintiff challenges is not his initial seizure but his continued detention for an hour after Defendants received and acknowledged his Secret Service credentials. Compl. ¶¶ 6–8, 55–57; *see* Pl.'s Opp'n 7, 9. Certainly, Criminal Law § 4-203 does not prohibit a federal "law enforcement official" from "wearing, carrying, or transporting . . . a handgun" if the official "is authorized at the time and under the circumstances to wear, carry, or transport the handgun as part of the person's official equipment." Crim. Law § 4-203(b)(1)(i).

But, as Defendants see it, "Plaintiff *allegedly* showed Ofc. Ferreyra his *purported* credentials identifying him as an agent with the U.S. Secret Service," and they "were not required to blindly accept Plaintiff's assertions that he was a Secret Service agent or that he was on-duty, particularly in light of circumstances reasonably casting suspicion on these assertions, such as Plaintiff's wearing civilian clothing and being in an unmarked vehicle." Def.'s Mot. 9–

7

10 (emphasis added). They insist that, unless Officer Ferreyra "omnisciently knew the circumstances under which a Secret Service agent could lawfully possess such a firearm," he would have probable cause for detaining Plaintiff, even if he accepted that he was a Secret Service agent. *Id.* at 10. In their view, "Plaintiff (carefully) <u>does not</u> allege that Ofc. Ferreyra [or Officer Phillips] 'confirmed and acknowledged' that Plaintiff was 'on duty' at that time." Defs.' Reply 4 (emphasis in Reply). Defendants also argue that Special Agent Hicks's alleged role in the motorcade was questionable because "the motorcade apparently <u>did not stop</u> or otherwise engage Defendants (or other USPP officers on scene) to assist Plaintiff – instead it kept traveling northbound on I-295." Defs.' Reply 5 (emphasis in Reply).

Not so. Federal law is clear that Secret Service agents "are authorized to . . . carry firearms." 18 U.S.C. § 3056(c)(1)(B). Indeed, for those without knowledge of the law or access to the United States Code, a two minute Google search for "secret service" brings up the United States Secret Service webpage, which states that "[u]nder Title 18, Section 3056, of the United States Code, agents and officers of the United States Secret Service can . . . [c]arry firearms." *See* https://www.secretservice.gov/about/faqs/. This authorization is not explicitly limited to when an agent is on duty or performing a specific service, *see* 18 U.S.C. § 3056(c)(1)(B), and Defendants have not identified any law to that effect. Thus, Maryland law does not prohibit a Secret Service agent from carrying a handgun at any time.[4] *See id.*; Crim. Law § 4-203(b)(1)(i).

Plaintiff immediately provided Defendants with his Secret Service credentials, along with an explanation of his assignment. Compl. ¶¶ 6–7; Pl.'s Opp'n 2. Thus, as a Secret Service agent, Plaintiff was authorized to carry a firearm, a fact that Defendants could have readily

---

[4] If the state statute contradicted the federal statute, the federal law would preempt and invalidate that aspect of the state law under the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2. *See Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987).

8

ascertained if they did not already know. And, as for their skepticism about the validity of Special Agent Hicks's credentials or the unkempt condition of his vehicle, or that he was wearing civilian clothes instead of a uniform, Defendants have not offered any reason, let alone evidence, to call Plaintiff's credentials into question. After all, the iconic image of a Secret Service agent is of a person in a business suit—not a uniform (and such a "notorious fact" can be judicially noticed, Fed. R. Evid. 201(b)(1)), and it is difficult to imagine that an unwashed car tilts the balance of facts to provide probable cause to extend the detention as long as it lasted. Nor have they explained why they could not have spoken with one of Plaintiff's supervisors to verify his credentials or assignment. Therefore, on the record currently before me, Defendants have not shown that the undisputed facts establish that they "act[ed] in objectively reasonable reliance on existing law." *See Queen*, 188 F. Supp. 3d at 541 (quoting *Rockwell*, 2014 WL 949859, at *8 n.10). Nor is Defendants' probable cause to detain Special Agent Hicks evident from the pleadings. Consequently, Defendants have not carried their burden at this stage of showing that they are entitled to qualified immunity. *See McDonnell*, 2013 WL 4852308, at *3.

## ORDER

Accordingly, it is, this 11th day of April, 2017, hereby ORDERED that Defendants' Partial Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 37, IS DENIED without prejudice.

                                            /S/
                                     Paul W. Grimm
                                     United States District Judge

lyb