## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NATHANIEL HICKS,

       Plaintiff,

       v.

OFFICER GERALD L. FERREYRA, *et al.*,

       Defendants.

Civil Action No. 8:16-cv-2521-PWG

Judge Paul W. Grimm

### PROPOSED PRETRIAL ORDER

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 106, and the Court's July 14, 2020 Memorandum to Counsel (Doc. 98), Plaintiff Nathaniel Hicks ("Plaintiff") and Defendants Gerald L. Ferreyra and Brian Phillips ("Defendants") jointly submit this Proposed Pretrial Order.

|  |  |
|---|---|
| **PLAINTIFF'S COUNSEL:** | **DEFENDANTS' COUNSEL:** |
| Jia M. Cobb (*pro hac vice*) | Andrew C. White, Esq. (Bar No. 08821) |
| Yiyang Wu (Maryland Fed. Bar No. 19187) | Edward P. Parent, Esq. (Bar No. 29370) |
| Angela A. Groves (*pro hac vice*) | Ilona Shparaga, Esq. (Admission Pending) |
| RELMAN COLFAX PLLC | Silverman Thompson Slutkin |
| 1225 19th Street, N.W., Suite 600 | White, LLC |
| Washington, DC 20036 | 201 North Charles Street, Suite 2600 |
| Telephone: (202) 728-1888 | Baltimore, Maryland 21201 |
| Facsimile: (202) 728-0848 | Tel: (410) 385-2225 |
| jcobb@relmanlaw.com | Fax: (410) 547-243 |
| ywu@relmanlaw.com | |
| agroves@relmanlaw.com | |

**A.**    **Brief Statement of Facts Plaintiff Proposes to Prove in Support of Claims and Listing of Separate Legal Theories Relied Upon in Support of Each Claim.**

**Facts Plaintiff Will Prove at Trial**

On July 11, 2015, Plaintiff Special Agent Nathaniel Hicks was unlawfully detained, twice, by two United States Park Police, Greenbelt Station ("USPP") officers—Gerald L. Ferreyra and

Brian A. Phillips (collectively "Defendants")—in violation of the constitutional prohibition against unreasonable seizures.

At trial, Plaintiff will prove the following. On the morning of July 11, 2015, Agent Hicks was assigned as the Baltimore Lead Advance Agent for Department of Homeland Security Secretary Jeh Johnson's motorcade, and was responsible for accompanying Secretary Johnson as his motorcade traveled through Maryland. In the scope of that role, Agent Hicks drove to a designated point on the shoulder of the Baltimore-Washington Parkway to meet the motorcade, parked on the side of the highway, made some calls to inform his colleagues that he was in position, and sat waiting in his Secret Service-issued vehicle for the motorcade to approach.

Shortly after Agent Hicks concluded his final preparatory call, he was approached by Defendant Ferreyra, acting under color of law as a USPP Officer. Upon approaching the vehicle, Defendant Ferreyra drew his gun, pointed his weapon at Agent Hicks, and began screaming at him.

Agent Hicks immediately and calmly identified himself as a United States Secret Service Agent. Defendant Ferreyra shouted at Agent Hicks to provide his credentials, and Agent Hicks complied by rolling down his car window and slowly passing his identification to Defendant Ferreyra. Agent Hicks further explained that he was on-duty and waiting to lead an official motorcade of a Secret Service protectee.

Defendant Ferreyra inspected Agent Hicks's credentials with his gun still aimed at Agent Hicks. Defendant Ferreyra recognized the name on the credentials, Nathaniel Hicks, as the Secret Service agent who had previously arrested him, and who he believed had treated him unfairly during the course of the arrest. Defendant Ferreyra then returned to his police cruiser, where he radioed for additional officer back-up.

Defendant Phillips, also acting under color of law as a USPP officer, heard Defendant Ferreyra's radio transmission and reported to the scene approximately five to ten minutes later. As

soon as Defendant Phillips arrived at the location where Defendant Ferreyra had been detaining Agent Hicks, Defendant Ferreyra briefed Defendant Phillips on his version of events, informing Defendant Phillips that Agent Hicks was a Secret Service Agent. Yet despite confirming and acknowledging that Agent Hicks was a federal law enforcement agent with the Secret Service, both Defendants continued to seize him without explanation. When Agent Hicks asked Defendants if he could leave, both Defendants ordered him to stay in his car.

Throughout the time he was detained, Defendants yelled obscenities at Agent Hicks and treated him in an objectively hostile and demeaning manner. Portions of Defendants' tirades were overheard by Agent Hicks's supervisors and Secret Service colleagues, with whom Agent Hicks had separately made contact at various points during his detention. Repeatedly, Agent Hicks asked for permission to be released so that he could join the motorcade of the Secret Service protectee, as required by his job duties.  Each Defendant, at various points during the time that  Agent Hicks was in custody, told Agent Hicks that he was not free to leave.

Thus, around 6:40 a.m.—after Agent Hicks had been detained for well over thirty minutes—Department of Homeland Security Secretary Johnson's Secret Service motorcade approached.  The motorcade slowed to allow Agent Hicks to join it as required by his Secret Service duties; however, Defendants refused to release him. Officer Phillips mockingly waved his hand goodbye at the motorcade as it passed.

At some time after Cabinet Secretary Johnson's motorcade passed, and while Agent Hicks remained detained, USPP Sergeant T. F. Wallace and USPP Lieutenant David Schlosser arrived. Following Agent Hicks's interactions with Sgt. Wallace, Defendant Ferreyra eventually returned Agent Hicks's service weapon and official credentials, but not before arranging them on Agent Hicks's front passenger seat (in a different placement than where he initially found the items) so that he could take photographs. All told, Agent Hicks was held on the scene for an hour by

Defendants. During the entire duration of the hour, Agent Hicks was not permitted to leave his car or the scene.

Within minutes of Agent Hicks driving away, Defendant Phillips pulled him over again. Agent Hicks had not done anything unlawful to justify Defendant Phillips stopping him. Defendant Phillips approached Agent Hicks's car and told him that he had observed him on his cell phone as he was departing the scene. When Agent Hicks attempted to explain that he was trying to contact his supervisor, Defendant Phillips told him that he was "mouthing off" and demanded his license and registration. After retrieving Agent Hicks's license and registration, Defendant Phillips went to his police cruiser to call in the stop, then eventually returned to Agent Hicks's car, tossed his license and registration back at him, and told him that he was not going to deal with Agent Hicks's nonsense.

Agent Hicks did nothing to justify being detained on the side of the road for at least an hour or being subsequently stopped a second time for no reason at all.  During the entirety of the seizure, Defendant Ferreyra and Defendant Phillips had no probable cause or even a reasonable suspicion to believe that Agent Hicks had done anything unlawful to warrant further detention. Defendants' actions were taken in willful disregard of Agent Hicks's clearly-established Fourth Amendment right to be free from unreasonable seizures, and as such, Plaintiff is entitled to recover compensatory and punitive damages from both Defendants.

### Plaintiff's Legal Theories

1.   A seizure that is lawful at the beginning can violate the Fourth Amendment because of its manner of execution. When an officer has reasonable suspicion that criminal activity is underway, but after some investigation, becomes aware that no criminal activity is happening at the scene, it is a violation of the Fourth Amendment to continue to detain that person. Here, Plaintiff does not challenge Defendant

4

Ferreyra's initial approach and contact with Agent Hicks; however, Defendant Ferreyra and Phillips continued to detain Agent Hicks during the first stop well after confirming that he was an on-duty Secret Service Agent and without probable cause or even a reasonable suspicion to believe that he had committed or was committing any crime. In doing so, Defendants Ferreyra and Phillips violated Agent Hicks's clearly established rights under the Fourth Amendment.

2.      Defendant Phillips's actions in stopping Agent Hicks for a second time (during a traffic stop) violated Agent Hicks's clearly established rights under the Fourth Amendment because Agent Hicks had done nothing unlawful to warrant being detained again.

3.      Agent Hicks is entitled to compensatory damages from both Defendants for embarrassment, humiliation, emotional distress, and deprivation of his constitutional rights that he suffered, and continues to suffer as a result of being deprived his constitutional rights.

4.      Agent Hicks is entitled to punitive damages from both Defendants because they acted intentionally and with callous or reckless disregard or indifference toward Plaintiff's constitutional rights.

**B.      Brief Statement of Facts that Each Defendant Proposes to Prove or Rely Upon as a Defense Thereto and Listing of Separate Legal Theories Relied Upon in Support of Each Affirmative Defense.**

<u>**Introduction**</u>

Plaintiff Nathaniel Hicks, a Special Agent with the United States Secret Service, ("Agent Hicks") suffered no violation of his rights and no damages; even if he had, Defendants at all times acted reasonably and are entitled to qualified immunity. United States Park Police Officer Gerald Ferreyra ("Ofc. Ferreyra") observed a damaged vehicle on the side of Interstate 295 and,

approaching to investigate, found Agent Hicks asleep in plainclothes next to a firearm displayed in plain view in the front passenger seat.  Unaware that Agent Hicks was himself federal law enforcement, it was only when Ofc. Ferreyra's cautious attempts to rouse Agent Hicks succeeded in startling Agent Hicks awake, prompting Agent Hicks to reach toward the aforementioned firearm, that Ofc. Ferreyra drew his own service weapon in response.  After he angrily denied being asleep, Agent Hicks then informed Ofc. Ferreyra that he was a Secret Service Agent awaiting a motorcade.  Both Agent Hicks and Ofc. Ferreyra requested that their supervisors become engaged – the former's over Agent Hicks' work cell phone, the latter's on scene after being requested so by Ofc Ferreyra over the radio.  Indeed, Agent Hicks was released without charges after his and defendants' supervisors resolved the situation.  After Agent Hicks left the scene, defendant United States Park Police Officer Brian Phillips ("Ofc. Phillips"), who had arrived as back-up during the first encounter but who left the scene prior to Agent Hicks being released, saw a swerving vehicle whose driver was talking on a hand-held cell phone while driving north on I-295.  Ofc. Phillips reasonably pulled the vehicle over because of these apparent traffic violations but, upon approaching and learning Agent Hicks was the driver, released him without charges or unreasonable delay.

Agent Hicks seeks to morph these anodyne facts into deliberate Bivens violations by Defendants, despite that they acted reasonably at all times, had no malicious motive, and caused him no damages.  Agent Hicks cannot present a plausible theory of the case other than what actually happened – a bizarre and coincidental series of encounters between law enforcement officers that resulted in no negative consequences for anyone involved, much less any serious constitutional transgressions.

**Facts**

On July 11, 2015, at approximately 6:00 a.m., Ofc. Ferreyra was driving on I-295 North

when he observed a 2014 Chevrolet Impala (the "Impala") parked on the side of the 198 interchange on I-295 North.  When Ofc. Ferreyra saw the Impala, he pulled over behind it to assess the situation.  Ofc. Ferreyra then approached the Impala from the passenger side, where he noticed body damage on the right rear quarter panel of the Impala, which did not have any lights on or give any other indication that it was a government issued vehicle.  Ofc. Ferreyra glanced into the front seat and noticed that the driver of the Impala was asleep and in a reclining position.  Ofc. Ferreyra – in full uniform – then knocked several times on the front passenger side window in order to wake-up the driver of the Impala.  Ofc. Ferreyra then noticed that there was a gun sitting in plain view on the front passenger seat.  The driver then awoke and reached for his gun.  In response, Ofc. Ferreyra drew his own weapon, pointed it at the driver, and started yelling "don't touch the weapon."  While his gun was drawn, Ofc. Ferreyra never placed his finger on the trigger, leaving it a little below the side rail of the gun.  Ofc. Ferreyra next demanded that the driver open the passenger side window.  After the driver did so, Ofc. Ferreyra reached into the Impala with his left hand and retrieved the driver's gun from the front passenger seat.  The driver then identified himself as United States Secret Service. Ofc. Ferreyra requested the driver's credentials which the driver provided to Ofc. Ferreyra.

The driver indicated to Ofc. Ferreyra that he was parked on the side of the road because he was waiting to join a motorcade.  The Park Police, however, never received advance notice of any such motorcade scheduled for that morning.  During their conversation, the driver denied that he was asleep at any point before Ofc. Ferreyra approached him.  Ofc. Ferreyra returned to his car to verify the driver's credentials.  The driver's credentials identified the driver as Agent Hicks.  Due to the discrepancy as to whether or not Agent Hicks was asleep when Ofc. Ferreyra approached the Impala and because Ofc. Ferreyra had drawn his weapon and nearly fired it at Agent Hicks, and following customary Park Police protocol, Ofc. Ferreyra requested that a supervisor come to

the scene.

Ofc. Phillips arrived on the scene approximately 10-13 minutes after Ofc. Ferreyra's initial contact with Agent Hicks, as back-up, in specific response to Ofc. Ferreyra's radio transmission requesting another unit at the scene. During this time, Ofcs. Ferreyra and Phillips waited for their supervisor to arrive on scene and take charge, which was the customary protocol given the circumstances.

At 6:32 a.m., Agent Hicks received a call on his work phone from his immediate supervisor, Assistant to the Special Agent in Charge ("ATSAIC") Robert Keane. While Agent Hicks was on the phone with ATSAIC Keane, Ofcs. Ferreyra's and Phillips' supervisor, Sgt. Timothy Wallace arrived on scene, approached the Impala and engaged Agent Hicks. Agent Hicks passed his work phone to Sgt. Wallace, who then spoke with ATSAIC Keane. At this point, Ofcs. Ferreyra and Phillips had both disengaged themselves from Agent Hicks, as was customary protocol. Ofc. Phillips left the scene shortly after Sgt. Wallace arrived on scene. At some point between 6:30 and 6:35 a.m., the motorcade in question passed the scene where Agent Hicks and Park Police personnel were located. Up until this time, Agent Hicks was required to stay at the scene to meet the motorcade. Once Sgt. Wallace ended his conversation with ATSAIC Keane, which was only several minutes after the motorcade drove passed the scene, he notified Agent Hicks that he was free to go, and Agent Hicks left the scene, his weapon and credentials having been returned. Agent Hicks did not suffer any repercussions or disciplinary action with the Secret Service as a result of missing the motorcade.

In total, between forty (40) to sixty (60) minutes elapsed from when Ofc. Ferreyra first arrived on the scene to when Agent Hicks departed. By this time, Ofc. Phillips – who left the scene before Agent Hicks did – had exited onto the I-198 ramp before eventually re-entering I-295 traveling northbound. Once traveling northbound, Ofc. Phillips noticed a car, which he did not

8

recognize as the Impala, approximately five hundred (500) yards ahead that was swerving in and out of its lane, to the point where it was driving over the rumble strips, and, upon closer inspection, observed that the driver, who he did not recognize, was on his mobile phone. Because of these observed traffic violations, Ofc. Phillips pulled the car over to the side of the road. Ofc. Phillips approached the driver and notified him that he was driving erratically and that using his mobile phone while driving is illegal in Maryland.  Ofc. Phillips only realized that Agent Hicks was the vehicle's driver when he approached the Impala and recognized him.  After receiving Agent Hicks' license and registration, Ofc. Phillips returned to his vehicle.   After only a few minutes, Ofc. Phillips returned Agent Hicks' license and registration to him and released Agent Hicks without writing him any traffic citation.  Ofc. Ferreyra did not learn about Ofc. Phillips' separate encounter with Agent Hicks until later that day.   Neither Ofc. Ferreyra nor Ofc. Phillips faced any repercussions or other disciplinary action from the Park Police as a result of their brief encounters with Agent Hicks, nor did Agent Hicks face any adverse action from the U.S. Secret Service for having missed the motorcade.

### Legal Theories

1. Agent Hicks' *Bivens* claim should be dismissed as a matter of law because under the mandatory analysis set forth in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) and *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019), the facts giving rise to Agent Hicks' claims present a new context from *Bivens* (and the 2 other Supreme Court cases recognizing a civil claim for alleged constitutional violations), and many special factors counsel hesitation in extending Agent Hicks' claim to this new context.

2. Defendants did not violate Agent Hicks' constitutional rights under the Fourth Amendment to the Constitution.

3.      Agent Hicks did not suffer any damages as a result of Defendants' actions during both encounters.

4.      Defendants are entitled to qualified immunity, because they objectively acted reasonably in both brief encounters with Agent Hicks in light of the exigent and unusual circumstances they faced.

**C.    Similar Statements as to any Counterclaims, Crossclaims, or Third-Party Claims.**

Not applicable.

**D.    Any Amendments Required of the Pleadings.**

Plaintiff has no amendments to the pleadings at this time.

Defendants have no amendments to the pleadings at this time.

**E.    Any Issues in the Pleadings to be Abandoned.**

Plaintiff is not abandoning any issues in his pleadings at this time. Plaintiff notes that his claim under 42 U.S.C. § 1985(1) was dismissed by the Court and thus will not be presented to the jury. However, Plaintiff reserves his right to appeal the Court's dismissal.

Defendants are not abandoning any issues at this time.

**F.    Stipulations of Fact or, if the Parties Are Unable to Agree, Requested Stipulations of Fact.**

**1.    The Parties Stipulate to the Following Facts:**

1)      Defendants Gerald Ferreyra and Brian Phillips were officials of the United States Park Police during their interactions with Plaintiff on the morning of July 11, 2015.

2)      As of July 11, 2015, the following phone numbers belonged to the following individuals:

a.   Nathaniel Hicks (work cell):                    (202) 263-9316

    b.  Nathaniel Hicks (personal Verizon cell):     (301) 848-7491

    c.  Scott Bradley:     (202) 870-6718

    d.  Aaron Simons:     (202) 578-1143

    e.  Robert Keane:     (202) 263-9332

    f.  Michael Ratay:     (301) 467-5286

    g.  Brian Murphy:     (202) 590-7229

3) Agent Hicks identified himself as a Secret Service Agent.

4) Agent Hicks indicated to Ofc. Ferreyra that he was parked on the side of the road because he was waiting to join a motorcade.

**2.**    **Plaintiff's Requested Stipulated Facts:**

Plaintiff has no additional requested stipulations of fact.

**3.**    **Defendants' Requested Stipulated Facts:**

1) On July 11, 2015 the sunrise was at 05:49 a.m.

2) On July 11, 2015, Ofc. Ferreyra was driving on I-295 North and observed a 2014 Chevrolet Impala parked on the side of the 198 interchange on Highway 295 North.

3) Agent Hicks sat in his government-assigned 2014 Chevrolet Impala on the shoulder of Interstate 295 North at approximately 6:00 a.m.

4) When Ofc. Ferreyra saw the vehicle, he pulled over behind it and approached the vehicle.

5) The driver in the parked 2014 Chevrolet Impala was Agent Hicks.

6) Agent Hicks' gun was placed on the front passenger seat.

7) Ofc. Ferreyra drew his own weapon, pointed it at Agent Hicks, and started yelling "don't touch the weapon."

11

8)      Ofc. Ferreyra demanded that Agent Hicks open the passenger side window.

9)      After Agent Hicks did so, Ofc. Ferreyra reached into the Impala with his left hand and retrieved Agent Hicks' gun from the front passenger seat.

10)     Ofc. Ferreyra requested Agent Hicks' credentials.

11)     Agent Hicks reached with his left hand into his left-back pocket and gave Ofc. Ferreyra his credentials.

12)     The Park Police never received advance notice of any motorcade scheduled for the morning of July 11, 2015.

13)     While in possession of Agent Hicks' credentials and weapon, Ofc. Ferreyra returned to his car to verify Agent Hicks' credentials.

14)     Ofc. Phillips arrived on the scene somewhere between 10-13 minutes after Ofc. Ferreyra's initial contact with Agent Hicks, following receipt of Ofc. Ferreyra's second transmission requesting assistance on scene.

15)     At 6:32 a.m., Agent Hicks received a call on his work phone from his immediate supervisor, Assistant to the Special Agent in Charge ("ATSAIC") Robert Keane.

16)     While Agent Hicks was on the phone with ATSAIC Keane, Ofcs. Ferreyra's and Phillips' supervisor, Sgt. Timothy Wallace arrived on scene and approached the Impala and engaged Agent Hicks.

17)     Agent Hicks passed his work phone to Sgt. Wallace, who then spoke with ATSAIC Keane.

18)     Once Sgt. Wallace ended his conversation with ATSAIC Keane, he notified Agent Hicks that he was free to go, and Agent Hicks left the scene.

19) In total, between forty (40) to sixty (60) minutes elapsed from when Ofc. Ferreyra first arrived on the scene to when Agent Hicks departed.

20) After Ofc. Phillips departed from the scene, he pulled the car over to the side of the road for using mobile phone while driving.

21) The driver was Agent Hicks, who was on the phone with Agent Michael Ratay.

22) Ofc. Phillips approached the driver and notified him that using his mobile phone while driving is illegal in Maryland.

23) After receiving Agent Hicks' license and registration, Ofc. Phillips returned to his vehicle.

24) While Ofc. Phillips was inside his vehicle, Ofc. Christopher Benz (who had also been on scene during the first encounter with Ofc. Ferreyra) pulled behind him as backup.

25) Within a few minutes, Ofc. Phillips returned Agent Hicks' license and registration to him and released Agent Hicks without writing him any traffic citation.

**G.    The Details of Damages Claimed or Other Relief Sought as of the Date of the Pretrial Conference.**

**<u>Plaintiff:</u>**

Plaintiff seeks the following categories of damages:

1. Compensatory damages from Defendants in an amount sufficient to compensate him for the embarrassment, humiliation, emotional distress, and deprivation of his constitutional rights that he suffered, and continues to suffer, as a result of his unlawful detention. The amount of such damages is

to be determined by a jury.

2.  Punitive damages as a result of Defendants' willful disregard of his constitutional rights.  The amount of such damages is to be determined by a jury.

3.  Any and all costs and/or fees incurred in this action that are available under law.

Plaintiff does not seek a declaratory judgment or injunctive relief against Defendants.

**Defendants:**

Defendants respectfully request this Court to dismiss this matter in its entirety with prejudice.

**H.    Exhibit Lists.**

For Plaintiff's exhibit list (and Defendants' objections thereto), please see

**Attachment A**.

For Defendants' exhibit list (and Plaintiff's objections thereto), please see

**Attachment B.**

**I.    Witness Lists.**

**Plaintiff's Witness List:**

Plaintiff will call the following witnesses in his case-in-chief:

1.  Nathaniel Hicks (Plaintiff)
    Contact through Plaintiff's counsel.

2.  Scott Bradley
    c/o C. Mark Lee
    Office of the Chief Counsel
    United States Secret Service
    245 Murray Ln SW - BLDG T-5
    Washington, DC 20223

14

202-604-6930

3.   Robert Keane
     c/o C. Mark Lee
     Office of the Chief Counsel
     United States Secret Service
     245 Murray Ln SW - BLDG T-5
     Washington, DC 20223
     202-604-6930

4.   Aaron Simons
     c/o C. Mark Lee
     Office of the Chief Counsel
     United States Secret Service
     245 Murray Ln SW - BLDG T-5
     Washington, DC 20223
     202-604-6930

5.   Custodians of Record for documents on exhibit list in the absence of
     stipulation from Defendants.

Plaintiff may call the following witnesses in his case-in-chief:

1.   Gerald Ferreyra (Defendant)
     Contact through Defendants' counsel.

2.   Vonda Hicks
     Contact through Plaintiff's counsel.

3.   Brian Murphy
     c/o C. Mark Lee
     Office of the Chief Counsel
     United States Secret Service
     245 Murray Ln SW - BLDG T-5
     Washington, DC 20223
     202-604-6930

4.   John Norris
     Penumbra Counseling LLC
     Annapolis, MD 21401
     (301) 710-9395

5.   Brian Phillips (Defendant)
     Contact through Defendants' counsel.

6.   Miltom Wilson

c/o C. Mark Lee
Office of the Chief Counsel
United States Secret Service
245 Murray Ln SW - BLDG T-5
Washington, DC 20223
202-604-6930

7.  Michael Ratay
c/o C. Mark Lee
Office of the Chief Counsel
United States Secret Service
245 Murray Ln SW - BLDG T-5
Washington, DC 20223
202-604-6930

8.  Any and all witnesses identified on Defendants' witness list or called by
Defendants for any purpose at trial.

**Defendants' Witness List:**

1.  Gerald Ferreyra
Contact through Defendants' counsel.

2.  Brian Phillips
Contact through Defendants' counsel.

3.  Timothy Wallace
c/o Office of the Solicitor
Department of the Interior
1849 C Street NW
Washington, DC 20240

4.  Custodians of Record for documents on exhibit list in the absence of
stipulation from Plaintiff.

5.  Any and all witnesses called by Plaintiff in his case-in-chief or rebuttal case.

**J.    Expert Lists.**

Not applicable.

**K.    Deposition Designations.**

Plaintiff does not intend to call any witness by deposition in his case-in-chief at this

time. Plaintiff reserves the right to seek the Court's permission to introduce deposition

testimony of witnesses at trial if circumstances arise between now and the date of trial that

16

render any of Plaintiff's witnesses unavailable.

For Defendants' deposition designations (and any objections thereto), please see

**Attachment C**.

For Plaintiff's deposition counter-designations (and any objections thereto), please

see **Attachment D**.

**L.       Any Other Pretrial Relief Requested.**

There are cross motions in limine and oppositions to motions in limine currently

pending. These have been entered under seal as docket numbers 102, 104, 108, and 110.

**M.       Any Other Matters Added by the Court.**

**1.       Proposed Voir Dire Questions**

For the parties' joint proposed voir dire questions, please see **Attachment E**.

**2.       Proposed Jury Instructions**

For the parties' jointly proposed jury instructions, please see **Attachment F**.

For Plaintiff's proposed jury instructions to which Defendants object, please see

**Attachment G**.

For Defendants' proposed jury instructions to which Plaintiff objects,[1] please see

**Attachment H**.

**3.       Proposed Special Verdict Form**

**Plaintiff:**

Plaintiff does not request any special verdict form in this case.

---

[1] Plaintiff agrees in principle that many of the standard jury instructions contained in Defendants' proposed jury instructions (in their Attachment H, derived from the Modern Federal Jury Instructions) are applicable to the instant matter. However, Plaintiff understands that the Court has stock jury instructions that it typically gives on these standard and generally applicable topics, absent any objection from the parties. It would be beneficial for Plaintiff to review the Court's standard jury instructions before asserting a position on the language of the standard instructions, and he respectfully reserves his right to do so. This caveat does not apply to the following instructions proposed by Defendants that Plaintiff contends are inapplicable to this case or otherwise objectionable: 71-7; 73-1; 73-3, 74-5; 76-5; 77-3; 77-5; 77-6; 77-7; 78-8; and 78-9.

Plaintiff objects to the special verdict form proposed by the Defendants. The Fourth Circuit has made clear that special interrogatories on qualified immunity are only implicated in cases in which "a dispute of material fact precludes a conclusive ruling on qualified immunity" by the Court. *Willingham v. Crooke*, 412 F.3d 553, 560 (4th Cir. 2005). The only remaining disputes of fact in this case pertain to Defendants' liability; thus, a jury's finding on liability would necessarily subsume any findings of fact that are also pertinent to qualified immunity. For example, if a jury found that Officer Phillips violated the Fourth Amendment, it will have resolved the disputed issue on whether Officer Phillips observed Agent Hicks engaging in any unlawful conduct in Plaintiff's favor, which is all that is needed for the Court to decide on the legal issue of qualified immunity. *See, e.g. Mazuz v. Maryland*, 442 F.3d 217, 233 (4th Cir. 2006) (*abrogated on other grounds*) (if the parties "agree[] on what transpired, [but] disagree[] only on what the facts meant," then the issue of qualified immunity must be decided by the Court, not the jury). Under similar circumstances, this Court has rightfully opted for the use of a general verdict form. *See* Verdict Sheet, *Butler v. Windsor*, PWG-13-883 (Dkt. No. 54) (§ 1983 case against multiple defendants). A special verdict form here would complicate the trial and confuse the jury, with no benefit to the Court in rendering a decision on qualified immunity.

In any event, the *thirty-nine* special interrogatories proposed by Defendants are confusing, prejudicial, and mischaracterize the legal issues in this case. Questions 11 through 19, for example, would require the jury to render findings of fact that solely speak to Officer Ferreyra's initial approach of Agent Hicks's vehicle—an action that Plaintiff does not even challenge in this lawsuit. Many other questions (*e.g.* 24-26) task the jury with evaluating the actions of non-parties that have no bearing on Defendants' culpability, and still others (*e.g.* 22, 27, 31) would be completely subsumed by the jury's ultimate decision on liability. These are just some examples of the problems posed by Defendants' special interrogatories, and for those reasons alone, the Court

should deny Defendants' request. At a minimum, the issue should be reserved, to be revisited after the parties' presentation of trial evidence, for a full accounting of which factual disputes remain or have been resolved. *See Rhodes v. Clemmons*, No. 7:13-CV-192-RJ, 2016 WL 3766307, at *2 (E.D.N.C. July 11, 2016).

### **Defendants:**

Defendants request that this Court submit to the jury a special verdict form containing special interrogatories necessary for this Court to determine whether, based on the facts decided by the jury, Defendants are entitled to qualified immunity as a matter of law. The special interrogatories in the attached special verdict form, that is attached hereto as **Attachment I**, require the jury to decide the issues of fact necessary for this Court to determine Defendants' qualified immunity defenses as a matter of law.

The Fourth Circuit recognizes that "the legal question of a defendant's entitlement to qualified immunity under a particular set of facts should be decided by the court, not by the jury." *Willingham v. Crooke*, 412 F.3d 553, 560 (4th Cir. 2005). However, "the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury." *Id*. Specifically, this Court explained that "[w]hether an officer's conduct was objectively reasonable, and hence protected by qualified immunity, is a question of law solely for the court. Only disputed issues of fact material to the court's objective reasonableness decision are submitted to the jury." *Posyton v. Maryland*, No. PWG-16-3887, 2017 WL 3704616, at *9 (D. Md. Aug. 28, 2017). The court typically submits special interrogatories to the jury, to assess the jury's factual findings on the facts relevant to the qualified immunity defense. *Id*.; *see also Scarbro v. New Hanover County*, 7:03-CV-244-FL, 2011 WL 2550969, at *4 (E.D.N.C. June 27, 2011) (stating that "resolution of the disputed facts relevant to the qualified immunity analysis should be 'communicated [by the jury] in the form of answers

19

to special interrogatories … these special interrogatories will be submitted to the jury in the form of a special verdict under Rule 49 at the close of all the evidence.'") (internal citations omitted).  This court further stated that "[t]he court then uses the jury's factual findings … to decide whether to grant qualified immunity." *Id*.

**Dated**: September 18, 2020

Respectfully Submitted,

/s/_____
Jia M. Cobb (*pro hac vice*)
Yiyang Wu (Maryland Fed. Bar No. 19187)
Angela A. Groves (*pro hac vice*)
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
jcobb@relmanlaw.com
ywu@relmanlaw.com
agroves@relmanlaw.com

*Attorneys for Plaintiff*

/s/_____
Andrew C. White, Esq. (Bar No. 08821)
Edward P. Parent, Esq. (Bar No. 29370)
SILVERMAN THOMPSON SLUTKIN WHITE, LLC
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
Tel: (410) 385-2225
Fax: (410) 547-2432
awhite@silvermanthompson.com
nparent@silvermanthompson.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, a copy of the foregoing Proposed Pretrial Order was electronically filed with the Court and served on all counsel of record via the Court's CM/ECF system.

/s/ Jia M. Cobb            

Jia M. Cobb