# EXHIBIT D

1  take care of what was going on with that car, because he had no
2  idea.
3          He approaches the car and what does he ultimately get?
4  He gets this.  He gets a federal lawsuit where Agent Hicks
5  ultimately is seeking to put a vacuum cleaner up to his bank
6  account.
7       (Pause )
8          MR. WHITE:  He gets a federal lawsuit seeking to have
9  a vacuum cleaner put on his bank account to award damages that
10 they don't even have the guts to put a number on.  That's what
11 he gets for doing his job.
12         Officer Phillips, eight years in the Army, honorable
13 discharge; 19 years as a police officer.  He hears on the radio
14 about the Code 60.  He comes over to the scene.  He, basically,
15 doesn't do much there.  When Sergeant Wallace gets on the scene,
16 he leaves.
17         Later on, a few minutes later, he sees a car off in
18 the distance, 500 yards ahead, swerving onto the rumble strip.
19 As he gets close, he sees a person who is on a cellphone.  He
20 pulls the car over, he's allowed to.
21         He then sees it's Agent Hicks.  He ultimately detains
22 him for two or three minutes and says, I'm not going to give you
23 a ticket or a warning, sir.  Go.  What does he get for it?  The
24 same thing as Officer Ferreyra, a federal lawsuit seeking
25 unspecified damages.

```
 1  whole case, huh, let's hear some damage, man.
 2          They didn't violate his rights, but I still want to
 3  know what their theory of damages is.  Go ahead, tell us.  I sat
 4  there waiting patiently.  What's your theory about damages?  And
 5  I even waited here today to figure out what it is.  And I still
 6  don't know.
 7          So isn't this great.  You put two people at risk with
 8  their personal bank accounts.  This is not a government lawsuit.
 9  You put two people's families at risk to a back computer -- bank
10  accounts and they don't ask you for money or a dollar amount to
11  give you any kind of guidepost as to how to parse things out.
12  Seriously?  That's what we're doing here.  Just come up with it,
13  ladies and gentlemen.  You can figure this out.  Come up with
14  it, a significant amount.
15          I don't get it.  Agent Hicks has had six; one, two,
16  three, four, five, six long years to figure this out and what
17  does he come before you today and say?  Huh, you figure it out.
18  I mean, seriously, it's a joke.
19          Let's talk about the damages.  They won't put a number
20  on it, but they say they want some significant amount because he
21  was detained for 47 minutes.  And then about three minutes
22  afterwards for a traffic stop, okay.
23          Oh, and by the way, the -- Ms. Cobb really just, sort
24  of, glossed over this.  But seriously, think about this:
25  Sergeant Wallace told you, he has no stake in this.  He told
```

1           THE DEPUTY CLERK:  Please state your full name for the
2   record and please spell your first and last name.
3           COURT SECURITY OFFICER:  First name David, Hinman,
4   H-I-N-M-A-N.
5           THE COURT:  Thank you very much, Officer Hinman.  And
6   with that in mind, Shante, let's get the jury to the jury
7   deliberation room.
8           THE DEPUTY CLERK:  All rise for the jury.
9       (The jury began deliberations at 3:44 p.m.)
10          THE COURT:  All right, folks.  When Shante --
11          Shante has your cellphones, right?  So you can go
12  wherever you need to go.  You can go down -- I think the
13  cafeteria is closed, so there's no finding down there, but you
14  can go in the separate witness rooms or stay here if you want.
15          Do please be close enough that if we do get a question
16  from the jury we can bring you back, because any question we get
17  from the jury, I'll want to bring you in, review it with you,
18  talk about a way to handle it and then bring the jury in and go
19  from there.
20          So, thank you very much and we are now at the pleasure
21  of the schedule of the jury.
22          Thank you.
23      (The Court resumed proceedings at 4:39 p.m.)
24          THE COURT:  All right.  We have a question from the
25  jury.  I'll read it to you and then we can chat about it.

```
 1                Shante will be giving you a copy that you can have it,
 2     but the original stays as the court expert.  They say, "If we
 3     award any damages, will defendants be paying directly or will
 4     the government be paying?"
 5                Now, I'm not inclined to do more than just simply
 6     reiterate what two things they've already been told.  Number one
 7     is, they have been told that it is agreed that the defendants
 8     were acting under color of state law.  So that's one thing that
 9     they know.  And we had the interrogatory answer that was read to
10     them, and so they have that information.  They have been told
11     that information.
12                I'm not going to add another instruction.  I'm not
13     inclined to add another instruction, because I think that we
14     have to tell them that the only information they have, they've
15     already been provided and they have to make the best choice they
16     can based upon that.
17                Plaintiffs want to be heard on that?
18                MS. COBB:  That approach sounds good to us.
19                MR. PARENT:  We agree, Your Honor.
20                THE COURT:  All right.  Now, do we -- I want to -- I
21     want to refer to the instruction on -- under color of state law,
22     that they were acting under color of state law, refer to the
23     number and I want to -- I want to -- we can either just say, you
24     have -- you had the interrogatory answer read to you and that
25     information is already before you.  Based upon those two things,
```